Filed 1/4/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DWIGHT D. STIRLING, | |
| Plaintiff and Appellant, | G053998 |
| v. | (Super. Ct. No. 30-2015-00824116) |
| GOVERNOR EDMUND G. BROWN, JR., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Theodore R. Howard, Judge. Affirmed. Request for Judicial Notice. Granted in part and denied in part.

Corey Lovato for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Fiel D. Tigno and Michael D. Gowe, Deputy Attorneys General, for Defendant and Respondent.

\*        \*        \*

**INTRODUCTION**

The California Military Whistleblower Protection Act, Military and Veterans Code section 56 (Section 56), affords certain rights and protections to service members of the California National Guard who face actual or threatened adverse personnel actions in retaliation for reporting waste, fraud, abuse of authority, violation of law, or threats to the public health and safety. A service member may file an allegation that a prohibited personnel action has been taken. The allegation is filed with the state inspector general, who must expeditiously determine whether there is sufficient evidence to conduct an investigation and, if so, expeditiously conduct an investigation and prepare a report on the results.

Under Section 56, subdivision (e) (Section 56(e)), if the inspector general is not outside the immediate chain of command of both the service member submitting the allegation and the individual or individuals alleged to have taken the challenged personnel action, then the inspector general must refer the allegation to the Chief of the National Guard Bureau and the Governor. At issue in this case is the scope of the Governor's responsibilities upon receiving an allegation referred by the inspector general.

Major Dwight D. Stirling, a part-time judge advocate in the California National Guard, brought a petition for writ of mandate in the trial court to compel Governor Edmund G. Brown, Jr. (the Governor) to act on Stirling's whistleblower allegation in accordance with Section 56, subdivisions (d) and (f)(1). Stirling argues that Section 56(e) requires the Governor to undertake the same preliminary determination, investigation, and reporting that is required of the inspector general under Section 56, subdivisions (d) and (f)(1). The Attorney General, representing the Governor, argues Section 56(e) does not require the Governor to take any particular action on a whistleblower allegation and permits the Governor to defer to the Chief of the National Guard Bureau, who is a federal military officer responsible for heading the federal agency that controls the United States Army National Guard.

2

The trial court sustained without leave to amend the Attorney General's demurrer to Stirling's amended petition for writ of mandate. Because we are reviewing a judgment following an order sustaining a demurrer without leave to amend, our analysis is necessarily limited to the pleadings and matters of which we may take judicial notice. (*Santa Ana Police Officers Assn. v. City of Santa Ana* (2017) 13 Cal.App.5th 317, 323.)

We conclude Section 56 is unambiguous, and its plain language does not require the Governor to undertake the procedures required of the inspector general in response to a whistleblower allegation. We also conclude, based on the appellate record, that Section 56 does not violate California's equal protection clause because in all cases a whistleblower allegation is referred to an impartial decision maker who has discretion whether to undertake a full investigation.

## FACTS AND PROCEDURAL HISTORY

### I.

### Allegations of the Writ Petition

Stirling alleged the following facts in his amended petition for writ of mandate.

Stirling is employed by the California Military Department (CMD) as a part-time judge advocate, which is a military attorney. He serves in the California National Guard and holds the rank of major. He has consistently received superior performance evaluations and "the highest possible marks for rectitude over the course of his 15-year career in the CMD."

In March 2014, Stirling became aware that nonattorneys were practicing law in the CMD's legal department. He alleged: "After alerting senior judge advocates in the CMD about the matter, [Stirling] learned that the senior judge advocates he alerted had themselves authorized the non-attorneys' practice of law in the first place. When the

3

illegal activity was not stopped, [Stirling] discharged his ethical duty by reporting the matter to the State Bar in April of 2014."

In October 2014, the CMD retaliated against Stirling by initiating a "secretive professional responsibility investigation" against him "while simultaneously reassigning him to a remote facility." The CMD allegedly directed Stirling to work alone and not to have contact with "his legal colleagues." More than 20 months after the investigation was initiated, Stirling had not been told of the nature of the allegations, interviewed by an investigator, or allowed to present evidence.

The CMD "flagged" Stirling. Flagging is "an unfavorable personnel action that bars him from being promoted, receiving awards, attending school, and many other administrative benefits."[1] Stirling alleged he has not been able to receive favorable personnel actions in that: "He cannot . . . take the courses necessary for promotion, be promoted, or receive awards. [Stirling]'s career progression has been stunted, placed in legal limbo. He has sustained—and continues to sustain—irreparable damage to his career progression, financial compensation, and professional reputation as a result of the retaliation."

In January 2015, Stirling filed a whistleblower allegation under the California Military Whistleblower Protection Act. When Stirling filed his whistleblower allegation, his supervisor was Colonel David Kauffman, a senior judge advocate in the CMD. Kauffman also was the inspector general, and, therefore, he referred the whistleblower allegation to the Governor pursuant to Section 56(e). The Governor has

---

[1] The applicable federal army regulations define the word "Flag" as "the suspension of favorable personnel actions." (U.S. Dept. of Army Reg., No. 600-8-2 (2012) § 1-1.) The Army Regulations state that "[a] properly imposed Flag" prohibits certain personnel actions, including appointment, reappointment, reenlistment, transfer, promotion in grade, and recommendation for and receipt of awards and decorations. (*Id.*, No. 600-8-2, § 3-1(a), (d) & (e).)

4

not performed any of the acts the inspector general would be required to perform in investigating a whistleblower allegation under Section 56.

## II.

### Handling of Stirling's Whistleblower Allegation

The inspector general also referred Stirling's whistleblower complaint to the Chief of the National Guard Bureau, who in turn referred the complaint to the Department of the Army Inspector General.  Investigation by the Department of the Army Inspector General was ongoing as of February 2016.

## PROCEDURAL HISTORY

Stirling filed his petition for writ of mandate in the Superior Court in December 2015 and filed an amended petition in June 2016.  As relief, the amended petition sought a writ of mandate commanding the Governor "to conduct the ministerial steps with regard to [Stirling]'s whistleblower complaint that the [inspector general] must perform in similar circumstances."  In the event the court construed Section 56, subdivisions (d) and (f)(1) as not requiring gubernatorial action, Stirling asked the court to declare Section 56 to be in violation of the equal protection clause of the California Constitution.

The trial court sustained without leave to amend the Governor's demurrer to the amended petition.  The court concluded that Stirling did not allege any failure to perform a mandatory ministerial duty or an equal protection violation.  In a minute order, the court stated:  "[Stirling] concedes that the Governor has received and reviewed the complaint, which is all § 56(e) requires.  As for equal protection, every complaint is referred to a neutral fact-finder.  If anything, [Stirling] is in a better position than other members of the National Guard because the Department of the Army Inspector General must comply with all seven steps of Army Regulation 20-1, whereas the [inspector general] has to consider an investigation in accordance with steps 1-3 of Army Regulation 20-1."

5

Stirling filed a notice of appeal before entry of judgment. In response to our notice of possible dismissal for lack of jurisdiction, Stirling submitted to us a signed judgment of dismissal entered in December 2016.

## DISCUSSION

## I.

### Request for Judicial Notice

The Attorney General has filed a request for judicial notice of six exhibits. Exhibits B, E, and F are copies of certain United States Department of the Army Regulations, and Exhibit D is a copy of National Guard Regulations, No. 500-5, as approved August 18, 2010 (NGR No. 500-5). The request is granted as to Exhibits B, D, E, and F. (Evid. Code, § 452, subd. (b); Cal Rules of Court, rule 8.252(a).)

Exhibit A is a copy of a declaration filed in a federal court action, *Dwight D. Stirling v. California Military Dept.* (C.D. Cal.) No. 8:16-cv-00436-JVS-DFM. Although we grant the request for judicial notice of the declaration (Evid. Code, § 452, subd. (d)), we cannot take judicial notice of the matters asserted in it or accept them as true (*Board of Pilot Commissioners v. Superior Court* (2013) 218 Cal.App.4th 577, 597). Exhibit C, which is a transcript of the hearing on the Attorney General's demurrer to Stirling's amended petition in this matter, is not the proper subject of judicial notice. The request is denied as to Exhibit C.

## II.

### The National Guard:  Background Law

The National Guard is an unusual military force because it serves both as the militias for the 50 states, the District of Columbia, Puerto Rico, Guam, and the American Virgin Islands, and as the reserve force for the United States Army and Air Force. "The [National] Guard occupies a distinct role in the federal structure that does not fit neatly within the scope of either state or national concerns. In each state the National Guard is a state agency, under state authority and control. At the same time,

6

federal law accounts, to a significant extent, for the composition and function of the Guard. Accordingly, the Guard may serve the state in times of civil strife within its borders while also being available for federal service during national emergencies." (*Knutson v. Wisconsin Air Nat. Guard* (7th Cir. 1993) 995 F.2d 765, 767, cert. den. (1993) 510 U.S. 933.)

All persons enlisting in a state National Guard/militia simultaneously enlist in the United States National Guard. (*Perpich v. Department of Defense* (1990) 496 U.S. 334, 345.) "In the latter capacity they became a part of the Enlisted Reserve Corps of the Army, but unless and until ordered to active duty in the Army, they retain their status as members of a separate State Guard unit." (*Ibid.*) "[U]ntil they are called into active federal service, the various state National Guards are governed not by the federal government, but by the individual states." (*Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 317 (*Holmes*).)

The Governor and his or her appointee, the Adjutant General, command the National Guard in each state. The United States Department of Defense, the Secretaries of the Army and the Air Force, and the National Guard Bureau prescribe regulations and issue orders to organize, discipline, and govern the National Guard. (32 U.S.C. § 110; see *Charles v. Rice* (1st Cir. 1994) 28 F.3d 1312, 1315.) "Through the Department of Defense's National Guard Bureau, the Department of the Army extends federal recognition to state National Guard units that comply with federal criteria; it may withdraw recognition if a unit ceases to comply. [Citation.] These state National Guard units are known as the Army National Guard. [Citation.] Together, all federally recognized state units comprise one of the reserve components of the Army, known as the Army National Guard of the United States." (*In re Sealed Cases* (D.C. Cir. 2009) 551 F.3d 1047, 1048.)

The California National Guard and the Office of the Adjutant General are included within the CMD. (Mil. & Vet. Code, §§ 50, 51.) The Governor is the

commander in chief of the California National Guard. (Cal. Const., art. V, § 7.) The Adjutant General is the head of the CMD. (Mil. & Vet. Code, § 52.)

The President of the United States is the commander in chief of the National Guard when under active federal duty status. (U.S. Const., art. II, § 2, cl. 1.) The Chief of the National Guard Bureau is the federal military authority who is responsible for the organization and operation of the National Guard Bureau. (10 U.S.C. § 10501(a), (b).) The Chief of the National Guard Bureau is "the channel of communications on all matters pertaining to the National Guard, the Army National Guard of the United States, and the Air National Guard of the United States between (1) the Department of the Army and Department of the Air Force, and (2) the several States." (*Id.*, § 10501(b).)

The dual function of the National Guard and dual enlistment by its members mean a service member may serve in any one of three statuses: (1) state active duty status, (2) Title 10 (active federal duty) status, or (3) Title 32 (hybrid) status.

State active duty has been explained as follows: "States are free to employ their National Guard forces under state control for state purposes and at state expense as provided in the state's constitution and statutes. As such service is performed in accordance with state law, National Guard members performing this type duty are said to be in state active duty status. National Guard Soldiers and Airmen serving in a state active duty status are under the command and control of the Governor and the state or territorial government. State governments bear all of the associated costs of National Guard members performing duties in a state active duty status. [¶] . . . National Guard members, operating in a state active duty status, perform duties authorized by state law that may include domestic law enforcement support and mission assurance operations. National Guard units performing such duties are subject to compliance with state financial and monetary policies, and are paid with state funds in accordance with state laws." (NGR No. 500-5, § 10-2(a) & (b).)

8

Title 10 status means the National Guard member has been called into *active* federal duty under the command of the President of the United States. NGR 500-5 explains: "The War Powers Clause of the Constitution grants the federal government the authority to mobilize and deploy National Guard units and personnel for federal missions both at home and throughout the world. Such federal service is performed under the authority of Title 10 U.S. Code, with command and control resting solely with the President and the Federal Government. When employed at home or abroad in Title 10 duty status, National Guard forces are relieved of duties as a member of their state National Guard, released from all state control, and become elements of the Reserve Component of the federal military force as members of the Army National Guard of the United States (ARNGUS) or the Air National Guard of the United States (ANGUS). National Guard units and members in a Title 10 duty status are members of the Department of Defense and subject to compliance with related financial policies and regulations." (NGR No. 500-5, § 10-4(a).)

Title 32 status is a hybrid in that a National Guard member operates under state active duty and under state control but in the service of the Federal Government. While under title 32 status, the National Guard service member is on state active duty funded by the federal government, but authorized, organized, implemented and administered by the state. (*Holmes, supra*, 90 Cal.App.4th at p. 317.) "This provision for state forces to operate in the service of the Federal Government is unique to the National Guard and is codified under the authority of Title 32 U.S. Code. When conducting domestic law enforcement support and mission assurance operations under the authorities of Title 32, National Guard members are under the command and control of the state and thus in a state status, but are paid with federal funds. Under Title 32, the Governor maintains command and control of National Guard forces even though those forces are being employed 'in the service of the United States' for a primarily federal purpose." (NGR No. 500-5, § 10-3(a).)

9

# III.

### Section 56(e) by Its Plain Language Does Not Require the Governor to Undertake the Procedures Required of the Inspector General in Response to a Whistleblower Allegation.

Section 56, in broad terms, does three things. First, Section 56, subdivision (b)(1)(A) prohibits a person from restricting any CMD member from communicating with a member of Congress, the Governor, a member of the Legislature, or any state or federal inspector general. Second, section 56, subdivision (b)(2) prohibits a person from taking or threatening to take an unfavorable personnel action, or withholding or threatening to withhold taking a favorable personnel action, against a CMD member for making a communication to "any person," including, but not limited to, a member of Congress, the Governor, a member of the Legislature, or any state or federal inspector general.

Third, and most relevant here, subdivisions (c) through (g) of Section 56 set forth the procedures and rights by which allegations made by CMD members for violations of Section 56, subdivision (b) are to be investigated and reported upon. Subdivision (c) provides: "Notwithstanding any other law, if a member of the department submits to an inspector general an allegation that a personnel action prohibited by paragraph (2) of subdivision (b) has been taken or has been threatened to be taken against the member of the department, the inspector general shall take action as provided by subdivision (d)."[2]

Section 56, subdivision (d) imposes on an inspector general receiving an allegation under subdivision (c) the obligation to do all of the following:

---

[2] The inspector general is responsible for investigating complaints or allegations regarding violations of the law, gross mismanagement, gross waste of funds, abuse of authority, and substantial and specified danger to public health or safety. (Mil. & Vet. Code, § 55, subd. (h)(1).)

10

"(1) Expeditiously determine whether there is sufficient evidence, in accordance with federal regulations governing federal inspectors general, to warrant an investigation of the allegation. [¶] (2) Conduct a separate investigation of the information that the member making the allegation believes constitutes evidence of wrongdoing under both of the following circumstances: [¶] (A) There has not been a previous investigation. [¶] (B) There has been a previous investigation but the inspector general determines that the previous investigation was biased or otherwise inadequate. [¶] (3) Upon determining that an investigation of an allegation is warranted, expeditiously investigate the allegation."

After the completion of the investigation, the inspector general must submit a report on the results to the Adjutant General within specified time frames. (§ 56, subd. (f)(1).)

Stirling submitted his Section 56 whistleblower allegation to the inspector general who, in the usual course of events, would have handled the allegation in the manner prescribed by Section 56, subdivisions (d) and (f)(1). The inspector general was not, however, outside Stirling's immediate chain of command and therefore referred the allegation to the Chief of the National Guard Bureau and the Governor pursuant to Section 56(e).[3] The Governor referred Stirling's whistleblower allegation to the Chief of the National Guard Bureau.

Stirling argues that Section 56(e) must be interpreted as requiring the Governor to undertake an investigation and prepare a report in accordance with Section 56, subdivisions (d) and (f)(1); that is, when a whistleblower allegation is referred to the Governor, he or she steps into the shoes of the inspector general. The Attorney General

---

[3] The full text of Section 56(e) is: "If the inspector general is not outside the immediate chain of command of both the member submitting the allegation and the individual or individuals alleged to have taken a personnel action prohibited by paragraph (2) of subdivision (b), the inspector general shall refer the allegation to the Chief of the National Guard Bureau and the Governor."

11

argues that under the plain language of Section 56(e) the Governor was not required undertake an investigation into Stirling's whistleblower allegations.

In a matter involving statutory interpretation, our fundamental task is to discern the Legislature's intent in order to effectuate the law's purpose. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141; *Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198 (*Fluor*).) We approach this task by first examining the statute's words, giving them their ordinary, usual, and commonsense meanings. (*People v. Gonzalez, supra*, 2 Cal.5th at p. 1141; *Fluor, supra*, 61 Cal.4th at p. 1198.) We examine the language of the entire statute and related statutes and harmonize the terms when possible. (*People v. Gonzalez, supra*, 2 Cal.5th at p. 1141.) The plain meaning of the statute controls if the statutory language is unambiguous. (*Fluor, supra*, 61 Cal.4th at p. 1198.) If the statutory language is reasonably susceptible to more than one interpretation, then extrinsic aids, such as statutory purpose, legislative history, and public policy, may be considered to determine legislative intent. (*Ibid*.)

Section 56(e) states "[i]f the inspector general is not outside the immediate chain of command" then "the inspector general shall refer the allegation to the Chief of the National Guard Bureau and the Governor." Section 56(e) says nothing more about the Governor's responsibilities. Section 56(e) does not impose any obligation on the Governor, and cannot impose any obligation on the Chief of the National Guard Bureau, who is a federal official. Section 56(e) says nothing about what the Governor is supposed to do with a whistleblower allegation. For example, Section 56(e) does not say the Governor, on receipt of an allegation, "shall proceed in accordance with subdivisions (d) and (f)(1)" or like language. Subdivisions (d) and (f)(1) of Section 56 only set forth what the inspector general must do upon receiving a whistleblower allegation.

We see nothing ambiguous about Section 56(e) standing alone or as part of Section 56 as a whole. If the Legislature had intended to impose duties upon the

12

Governor under Section 56(e), it easily could have done so, as it did in subdivisions (d) and (f)(1) of Section 56.

Stirling does not assert an ambiguity in any particular word or phrase of Section 56. He is not urging us to accept a definition or construction of a particular word or phrase but is asking us to construe Section 56 by adding terms to it. This distinction is important. Our task when construing a statute is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted." (Code Civ. Proc., § 1858.) "It is . . . against all settled rules of statutory construction that courts should write into a statute by implication express requirements which the Legislature itself has not seen fit to place in the statute." (*In re Rudy L.* (1994) 29 Cal.App.4th 1007, 1011.)

We are also constrained by the separation of powers doctrine from construing Section 56 as imposing obligations on the Governor to investigate military whistleblower allegations. Article III, section 3 of the California Constitution divides the power of the state government into the legislative, executive, and judicial branches, and prohibits any person charged with exercising power belonging to any one of those branches from exercising any function belonging to the other two. The purpose of the separation of powers doctrine is to prevent one branch of government from exercising the constitutional power vested in another branch. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662.) Although the separation of powers doctrine does not prohibit the Legislature from enacting laws that might affect the Governor's actions (see *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 557), implying an obligation on the Governor's part under Section 56(e), when none expressly exists, is inconsistent with the doctrine.

Because we conclude that Section 56(e) is unambiguous, its plain meaning controls, and we do not consider extrinsic aids. (*Fluor, supra*, 61 Cal.4th at p. 1198.) We may reject a literal construction of a statute if doing so would frustrate its purpose or lead to an absurd result. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 27;

13

*Flannery v. Prentice* (2001) 26 Cal.4th 572, 576-578.)  But the result contemplated by the plain language of Section 56(e) is not absurd.

**IV.**

**Section 56 Does Not Violate the Equal Protection Clause**
**of the California Constitution.**

Stirling contends Section 56 violates California's equal protection clause (Cal. Const., art. I, § 7, subd. (a)) if it is construed as not requiring the Governor to conduct an investigation into his whistleblower allegation.  The state equal protection clause, though substantially similar to the federal one, is "possessed of an independent vitality" and in a given case "may demand an analysis different from that which would obtain if only the federal standard were applicable." (*Serrano v. Priest* (1976) 18 Cal.3d 728, 764.)

""""The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."" [Citation.] 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged." (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.)  Two groups are similarly situated for equal protection analysis if they are "'sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction [in treatment] is justified.'" (*Woods v. Horton* (2008) 167 Cal.App.4th 658, 670.)

Section 56(e) in effect creates two classifications of California National Guard service members:  (1) those not within the inspector general's chain of command, and (2) those within the inspector general's chain of command.  These two groups are

14

similarly situated with respect to the purposes of Section 56. When enacting the California Military Whistleblower Protection Act, the Legislature found and declared: "(d) The California Military Department Inspector General and the California Military Whistleblower Protection Act are intended to mirror federal law and regulations that govern federal inspector generals, specifically the federal Inspector General Act of 1978 and the federal Military Whistleblower Protection Act. Members of the Military Department should be free to communicate and report waste, fraud, abuse of authority, violations of law, or threats to the public health and safety without fear of retribution. [¶] (e) Public servants best serve the citizenry when they can be candid and honest without reservation in conducting the people's business." (Historical and Statutory Notes, 46 West's Ann. Mil. & Vet. Code (2017 Supp.) foll. § 55, p. 4.)

The policy of encouraging California National Guard service members to report waste, fraud, abuse of authority, violations of law, or threats to the public health and safety without fear of retribution, extends equally to service members within the inspector general's chain of authority and those not within the inspector general's chain of authority. The distinction between those two groups was made, not because the purpose of section 56 was different for each, but to avoid the conflict of interest that might arise if the complaining service member is in the inspector general's immediate chain of command.

But Section 56 does not, in effect, afford unequal rights and protections to the two classifications of California National Guard service members. There is no unequal treatment between these two groups because, for both classifications, the whistleblower allegation is referred to an impartial decision maker who is not compelled to undertake an investigation. Under Section 56, subdivision (d), the inspector general has discretion to determine whether an allegation warrants an investigation. The Governor likewise may decline to investigate a whistleblower allegation. Section 56 thus

15

guarantees a member of neither classification a full investigation of a whistleblower allegation.

Section 56, subdivision (d)(1) states the inspector general shall "[e]xpeditiously determine whether there is sufficient evidence, *in accordance with federal regulations governing federal inspectors general*, to warrant an investigation of the allegation." (Italics added.) Stirling argues the italicized language means the inspector general must conduct the seven-step investigation process required by United States Army Regulation, No. 20-1, as approved November 29, 2010 (AR No. 20-1), for investigation by the United States Army Inspectors General of allegations of impropriety, mismanagement, unethical behavior, or misconduct.[4] The seven-step process set forth in AR No. 20-1, section 7-1b, encompasses the entire investigation process, starting with receiving the inspector general action request and concluding with notifying the claimant in writing of the results of the investigation and closing the action request. Section 56, subdivision (d)(1) only concerns the state inspector general's preliminary determination whether to investigate the allegation and therefore cannot be read as requiring the inspector general to conduct the entire seven-step investigation process of AR No. 20-1. Section 56, subdivision (d)(1) at most would incorporate step 1, which is "*receive the inspector general action request*" and step 2, which is "*conduct inspector general preliminary analysis.*" (AR No. 20-1, § 7-1b(1) & (2).)

A service member, such as Stirling, who is within the inspector general's immediate chain of command has the added protection that the whistleblower allegation is referred to the Chief of the National Guard Bureau. AR No. 20-1 applies to the Army National Guard of the United States and the United States Army Reserve. (AR No. 20-1,

---

[4] The relevant federal regulation is section 7-1b(1)-(7) of AR No. 20-1. Section 7-1(b) states the United States Army Inspectors General "will use the 7-step IGAP outlined in 'The Assistance and Investigations Guide' to perform IG investigative inquiries and investigations." (*Ibid.*)

16

"Applicability.")  Here, the Chief of the National Guard Bureau referred Stirling's whistleblower allegation to the Department of the Army Inspector General, who accepted the allegation and commenced an investigation.  That investigation would have to be undertaken in compliance with AR No. 20-1, section 7-1b(1)-(7).

The Chief of the National Guard Bureau might not be able to affect Stirling's employment record because Stirling, while on Title 32 status, is considered a state employee.  (*Holmes, supra*, 90 Cal.App.4th at p. 317; *Chester v. State v. California* (1994) 21 Cal.App.4th 1002, 1004, fn. 4.)  But nothing bars the Chief of the National Guard Bureau from investigating Stirling's whistleblower allegation.  If the Department of the Army Inspector General finds wrongdoing, it would be expected that the Governor, the Adjutant General, or the inspector general would take the necessary corrective action.

## DISPOSITION

The judgment is affirmed.  In the interest of justice, the parties shall bear their own costs on appeal.


                                        FYBEL, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.


17