**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FIDELITAD, INC., a Washington corporation,<br>*Plaintiff-Counter-Defendant-Appellant*,<br><br>v.<br><br>INSITU, INC., a Washington corporation,<br>*Defendant-Counter-Claimant-Appellee.* | No. 17-35162<br><br>D.C. No.<br>2:13-cv-03128-TOR<br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, Chief Judge, Presiding

Argued and Submitted May 15, 2018
Seattle, Washington

Filed September 25, 2018

Before: Marsha S. Berzon, Stephanie Dawn Thacker,[*]
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

---

[*] The Honorable Stephanie Dawn Thacker, United States Circuit Judge for the U.S. Court of Appeals for the Fourth Circuit, sitting by designation.

## SUMMARY**

### Jurisdiction

Reversing the district court's judgment in favor of the defendant on state law claims, the panel held that the district court erred in denying the plaintiff's motion to remand the case to the state court from which it had been removed.

The defendant designed and manufactured drones that it sold to military and civilian customers. The plaintiff, a value-added reseller of defendant's drones in Latin America, alleged that the defendant improperly delayed shipment of its orders, wrongfully terminated a purported distributorship agreement, and then moved into the Latin American market, appropriating the plaintiff's prior groundwork.

The defendant removed the action based on 28 U.S.C. § 1442(a)(1), which allows removal of a civil action against a federal officer or any person acting under that officer. The panel held that the plaintiff's remand motion should have been granted because the defendant was not acting "pursuant to a federal officer's directions" in undertaking the actions that were the subject of the plaintiff's complaint. No federal officer directed the defendant to delay the plaintiff's orders or cease doing business with the plaintiff. The panel held that complying with the International Traffic in Arms Regulations, governing the sale of military goods to foreign governments, did not bring the defendant within the scope of the federal officer removal statute. The defendant also was not entitled to removal as a federal contractor.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed the district court's judgment and remanded with instructions to remand the action to state court.

---

## COUNSEL

Shelby R. Frost Lemmel (argued) and Kenneth W. Masters, Masters Law Group P.L.L.C., Bainbridge Island, Washington; Mark G. Jackson, Jackson Rosenfield LLP, Seattle, Washington; for Plaintiff-Counter-Defendant-Appellant.

Eric B. Wolff (argued) and Steve Y. Koh, Perkins Coie LLP, Seattle, Washington, for Defendant-Counter-Claimant-Appellee.

---

## OPINION

HURWITZ, Circuit Judge:

Insitu, Inc. designs and manufactures unmanned aerial systems—commonly known as "drones"—that it sells to military and civilian customers. Fidelitad, Inc. is a value-added reseller of Insitu's drones in Latin America. In this action, Fidelitad claims that Insitu improperly delayed shipment of its orders, wrongfully terminated a purported distributorship agreement, and then moved into the Latin American market, appropriating Fidelitad's prior groundwork.

Fidelitad filed its original complaint in Washington state court. Insitu removed the action to the United States District Court for the Eastern District of Washington, invoking

28 U.S.C. § 1442(a)(1), which allows removal of civil actions against "any officer (or any person acting under that officer) of the United States." The district court denied Fidelitad's motion to remand and later granted summary judgment to Insitu. We hold that the motion to remand should have been granted. We therefore reverse, with instructions to remand the action to state court.

## I. Background

### A. Facts

In late 2009, two Insitu employees, Eric Edsall and Alejandro Pita, assisted the Colombian Air Force after its purchase of two Insitu drones. While in Colombia, Edsall and Pita identified a number of potential non-military applications for the drones (for example, pipeline surveillance and counter-narcotics operations). With Insitu's blessing, Edsall and Pita formed Fidelitad in 2010, to act as a value-added reseller of Insitu's products in Latin America. Although Insitu was supportive of Fidelitad, the two companies never entered into a written contract.

By October 2010, Fidelitad had made several sales of Insitu drones to the Colombian Air Force and the United States military in Colombia (for end use by the Colombian military). Fidelitad placed orders for the drones with Insitu and obtained export licenses from the federal government. But, Insitu delayed filling the orders, asking Fidelitad first to obtain clarification on various provisions in the export licenses from federal officials. For example, Insitu asked Fidelitad to inquire whether separate licenses were required

to export sensors on the drones.[1]  Alternatively, Insitu suggested to Fidelitad that the United States take title to the drones in this country and export them to Colombia itself, making the export licenses unnecessary.

Fidelitad accepted delivery of one of the drones, but without the disputed sensors.  Fidelitad then arranged to transfer the remaining drones it had ordered to the federal government, and the government in turn agreed to transfer title to the Colombian Air Force.  After filling these orders, Insitu refused to accept any further orders from Fidelitad.  Insitu subsequently made several sales directly to Colombian customers previously solicited by Fidelitad.

### B.  Procedural History

After removal, the district court denied Fidelitad's motion to remand, and later granted summary judgment to Insitu.  Fidelitad timely appealed, and now challenges both the denial of the motion to remand and the summary judgment.

We have jurisdiction over Fidelitad's appeal under 28 U.S.C. § 1291, and review the district court's denial of remand de novo, *see Corona-Contreras v. Gruel*, 857 F.3d 1025, 1028 (9th Cir. 2017), accepting the facts alleged in the notice of removal as true, and drawing all reasonable inferences in Insitu's favor, *see Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014).

---

[1] Specifically, Insitu requested clarification of provisions in the export licenses, stating that the drones must be "the same version, with the same performance capabilities" as those already in use by the Colombian military, and that Fidelitad must obtain separate licenses to export "cameras, . . . sensors, GPS, datalinks, [and] radios."

## II.  Discussion

### A.  Licensing Framework

The Arms Export Control Act, 22 U.S.C. §§ 2751–2799aa-2, and the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120–30, govern the sale of military goods to foreign governments.  These provisions establish two primary methods through which a foreign government may purchase military equipment manufactured by United States companies: a Direct Commercial Sale ("DCS") or a Foreign Military Sale ("FMS").  *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 703 (4th Cir. 2007); *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1040 (9th Cir. 1983).  In FMS transactions, the foreign government contracts directly with the United States, and the United States either provides equipment from its own inventory or purchases it from a contractor.  *Trimble Navigation*, 484 F.3d at 703; 22 C.F.R. § 126.6(c).  In DCS transactions, the foreign government contracts directly with a United States company, which must obtain an export license from the State Department before supplying the goods.  *Trimble Navigation*, 484 F.3d at 703; 22 C.F.R. §§ 123–25.

### B.  Federal Officer Removal

The federal officer removal statute permits removal of a state-court action against an "officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  The statute protects federal officers from interference with their official duties through state-court litigation. *See Arizona v. Manypenny*, 451 U.S. 232, 241–42 and n.16 (1981); *Willingham v. Morgan*, 395 U.S. 402, 405–

06 (1969); *see, e.g.*, *Tennessee v. Davis*, 100 U.S. 257, 261, 271 (1879) (permitting removal of a criminal case against a federal revenue officer for homicide occurring during a distillery raid). The federal officer removal statute responds to three general concerns: (1) "State-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials"; (2) "States hostile to the Federal Government may impede" federal law; and (3) "States may deprive federal officials of a federal forum in which to assert federal immunity defenses." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007) (citations omitted). Although the statute is "liberally construed" to respond to these concerns, *see Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252–53 (9th Cir. 2006), the Supreme Court has cautioned that its "broad language is not limitless," *Watson*, 551 U.S. at 147.

To invoke § 1442(a)(1) removal, a defendant in a state court action "must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251; *see Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). The first requirement is not today in dispute; Insitu is plainly a "person" within the meaning of § 1442(a)(1). *See Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) ("[C]orporations are 'person[s]' under § 1442(a)(1)." (second alteration in original)). The central issue in this case, however, is whether Insitu was acting "pursuant to a federal officer's directions" in undertaking the actions that are the subject of Fidelitad's complaint.

"For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Id.* at 1245 (emphases omitted) (quoting *Watson*, 551 U.S. at 152). The "relationship typically involves 'subjection, guidance, or control.'" *Watson*, 551 U.S. at 151 (quoting Webster's New International Dictionary 2765 (2d ed. 1953)). The paradigm is a private person acting under the direction of a federal law enforcement officer. *See id.* at 149; *see, e.g.*, *Maryland v. Soper*, 270 U.S. 9, 30 (1926) (noting that a private party acting as a federal officers' driver in a distillery raid had "the same right to the benefit of" the removal provision as did the federal agents); *Davis v. South Carolina*, 107 U.S. 597, 600 (1883) (holding that a soldier who killed a distiller during a raid could remove his criminal case because he "lawfully assist[ed]" a revenue officer "in the performance of his official duty").

No federal officer directed Insitu to delay Fidelitad's orders or cease doing business with Fidelitad. *Cf. CRGT, Inc. v. Northrop Grumman Sys. Corp.*, No. 1:12-cv-554, 2012 WL 3776369, at *1–2 (E.D. Va. Aug. 28, 2012) (holding that a private contractor was acting under a federal officer when it terminated a subcontractor, because the government directed the contractor to "halt the provision of services that were the object of its subcontract"). Indeed, there is no evidence in the record of any communication between Insitu and a federal officer about the Fidelitad orders.[2]

Insitu nonetheless insists it was "acting under" a federal officer because (1) the ITAR provides that a person may not "knowingly or willfully attempt, solicit, cause, or aid, abet,

---

[2] Insitu's counsel candidly admitted at oral argument that there was no such communication. *See* Oral Argument at 17:25–:36, 28:08–:24.

counsel, demand, induce, procure, or permit the commission of any act prohibited by" an export license and (2) it delayed the orders to ensure Fidelitad complied with the federal export licenses. *See* 22 C.F.R. § 127.1(b)(1), (e). But, "simply complying with the law" does not bring a private actor within the scope of the federal officer removal statute. *Watson*, 551 U.S. at 152 (emphasis omitted); *see also Lu Junhong v. Boeing Co.*, 792 F.3d 805, 808 (7th Cir. 2015) ("[A]ll businesses must ensure that they comply with statutes and regulations."). In *Watson*, for example, the plaintiffs' state court complaint alleged that Philip Morris cigarettes delivered more tar and nicotine than advertised. 551 U.S. at 146. The company removed the case under § 1442(a)(1), arguing that it was acting under the direction of a federal officer because it used a testing method required and closely monitored by the federal government. *Id.* at 146–47. The Supreme Court rejected that argument, holding that § 1442(a)(1) did not allow removal simply because a federal agency "directs, supervises, and monitors a company's activities in considerable detail." *Id.* at 145, 153. "The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id.* at 153.

Insitu argues that it was not merely complying with federal regulations but also attempting to enforce specific provisions in Fidelitad's export licenses. But, *Watson* rejected the proposition that "a company subject to a regulatory order (even a highly complex order)" is acting under a federal officer. *Id.* at 152–53; *see also id.* at 157 (noting that "differences in the degree of regulatory detail or supervision cannot by themselves transform . . . regulatory compliance into" actions taken under a federal officer (emphasis omitted)). And, Insitu does not claim that the federal government delegated its authority to Insitu to ensure

Fidelitad's compliance with the export license provisions. *See id.* at 156 (finding the absence of a "formal delegation" of authority dispositive, including "any contract, any payment, any employer/employee relationship, or any principal/agent arrangement"); *see also Lu Junhong*, 792 F.3d at 808–10 (finding that an airplane manufacturer was not "acting under" a federal officer for purposes of a failure-to-warn suit, although federal law gave the manufacturer authority to self-certify compliance with the relevant regulations).

Nor is Insitu entitled to removal as a government contractor. *Watson* left open whether contractors "helping the Government to produce an item that it needs" or to "fulfill other basic governmental tasks" might remove cases under § 1442(a)(1). 551 U.S. at 153–54. We have therefore held that government contractors, in some circumstances, can "act under" federal officers when producing goods for the United States military. *See Leite*, 749 F.3d at 1123–24 (holding that a manufacturer of equipment for the Navy could remove a failure-to-warn suit alleging asbestos exposure). But, the government did not contract with Insitu for the equipment at issue. Rather, Fidelitad ordered the drones directly from Insitu. Indeed, Insitu does not claim to have acted pursuant to a directive in any federal contract, relying instead on the ITAR and Fidelitad's export licenses. But the ITAR and export licenses do not "establish the type of formal delegation that might authorize [Insitu] to remove the case." *Watson*, 551 U.S. at 156.[3]

---

[3] Insitu also argues that it is entitled to removal because it was helping the government achieve foreign policy objectives. We decline that gambit. *Watson*, upon which Insitu relies, simply suggests that a private actor might fall within the terms of the statute if "helping the

## III.    Conclusion

Even construed in the light most favorable to Insitu, the notice of removal does not establish that Insitu was acting under the direction of a federal officer in its relevant dealings with Fidelitad.  Nor was this defect cured prior to entry of judgment. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 75–77 (1996); *Estate of Bishop ex rel. Bishop v. Bechtel Power Corp.*, 905 F.2d 1272, 1275 (9th Cir. 1990).  And, no party has suggested a basis for federal subject matter jurisdiction other than § 1442(a)(1).  We therefore reverse the judgment of the district court and remand with instructions to remand this action to state court.[4]

   **REVERSED** and **REMANDED** with instructions.

---

Government to produce an item that it needs" pursuant to a federal contract.  551 U.S. at 153.  Insitu did not act pursuant to a contract with the federal government.

[4] Because we conclude that Insitu was not acting under the direction of a federal officer, we need not consider whether Insitu satisfied the third requirement for § 1442(a)(1) removal—a colorable federal defense. *See Durham*, 445 F.3d at 1251.  We also, of course, express no view as to the merits of the causes of action asserted in the amended complaint, or whether they are properly subject to summary adjudication.