**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DWIGHT D. STIRLING,
            *Plaintiff-Appellant*,

v.

LARRY MINASIAN, Lt. Col.,
Erroneously Sued As David
Minasian,
            *Defendant-Appellee.*

No. 18-55834

D.C. No.
8:18-cv-00205-
AG-JCG

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

Argued and Submitted November 8, 2019
Pasadena, California

Filed April 8, 2020

Before: Mary M. Schroeder and Michelle T. Friedland,
Circuit Judges, and Roslyn O. Silver,[*] District Judge

Opinion by Judge Schroeder

---

[*] The Honorable Roslyn O. Silver, United States District Judge for
the District of Arizona, sitting by designation.

## SUMMARY[**]

### Removal Jurisdiction / Federal Officer

The panel affirmed the district court's order denying Dwight Stirling's motion to remand his case to California state court after the defendant removed the case to federal court.

Stirling is an attorney in the Judge Advocate General Corps ("JAG") of the California Army National Guard, and a member of the California State Bar.  Stirling sought to obtain a ruling that his JAG colleague Lawrence Minasian was engaged in the unauthorized practice of law because Minasian was licensed only in states outside of California. Minasian is an attorney licensed in Tennessee and Arkansas, who lives in California and serves as a Regional Defense Counsel in the California Army National Guard's JAG Trial Defense Service (TDS).

28 U.S.C. § 1442(a)(1) allows for the removal to federal court of a "civil action or criminal prosecution" against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States."

The panel held that Minasian was entitled to remove this case to federal court as a "person acting under" an officer of the United States.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel rejected Stirling's argument that this was not a "civil action or criminal prosecution" under 28 U.S.C. § 1442(a)(1). First, the panel held that Minasian was a "person" within the meaning of the statute. Second, the panel held that there was a causal nexus between Stirling's claims and Minasian's actions taken pursuant to a federal officer's directions, where Minasian was directly supervised by a federal Title 10 officer who served as the Chief of the Army National Guard Trial Defense Service, and Minasian's practice reflected the type of federal supervision and management envisioned by the applicable federal regulations and guidance. Third, the panel held that Minasian raised a colorable federal defense under the Supremacy Clause whereby Minasian was appointed and practiced under a federal regulatory scheme that preempted a claim by a private individual that would have the effect of invalidating those federal regulations in states, like California, that do not require all TDS attorneys to become members of the State Bar.

**COUNSEL**

Corey Lovato (argued), Phoenix, Arizona, for Plaintiff-Appellant.

David Pinchas (argued), Assistant United States Attorney; David M. Harris, Chief, Civil Division; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Defendant-Appellee.

**OPINION**

SCHROEDER, Circuit Judge:

Dwight Stirling is an attorney in the Judge Advocate General Corps (JAG) of the California Army National Guard. He is a member of the California State Bar, but not all of his colleagues are. Applicable federal law requires only membership in good standing of the bar of any state, territory, or the District of Columbia to practice as a JAG attorney in limited ways, including (as relevant to this case) when those attorneys defend members of the California Army National Guard in administrative actions, investigations, or inquiries. *See, e.g.*, National Guard Regulation ("NGR") 27-12 § 2-1. The California Bar has concluded, in response to complaints from Stirling, that such practice is also consistent with California law. Nevertheless, Stirling has tried unsuccessfully for a number of years to obtain a ruling that his JAG colleagues must also be members of the California Bar. *See In re Lusk*, No. SACV 16-0930 AG (JCGx), 2016 WL 4107671 (C.D. Cal. July 30, 2016), *appeal dismissed sub nom. Stirling v. Lusk*, No. 16-56199, 2017 WL 7733073 (9th Cir. Nov. 16, 2017).

Stirling now appeals the district court's order denying his motion to remand the case to California state court, where he wants to pursue his claim that a JAG colleague, defendant Lawrence Minasian, is engaged in the unauthorized practice of law because Minasian is licensed only in states outside of California. Minasian, represented by the United States Attorney, removed Stirling's action against him to federal court.

The precise issue we must decide is a narrow one. 28 U.S.C. § 1442(a)(1) allows for the removal to federal court of "[a] civil action or criminal prosecution" against

"[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States." The issue presented in this appeal is whether Minasian was entitled to remove this case to federal court as a "person acting under" an officer of the United States.

The issue has been framed by the background of these proceedings. Minasian is an attorney licensed in Tennessee and Arkansas. He lives in California and serves as a Regional Defense Counsel in the California Army National Guard's JAG Trial Defense Service (TDS). In response to a complaint from Stirling, the California State Bar previously determined that, as a National Guard attorney, Minasian is not engaged in the unauthorized practice of law in California. Nonetheless, Stirling filed this action against Minasian in state court, seeking a writ seizing Minasian's law practice for having engaged in the unauthorized practice of law. Minasian removed the case to federal court on the basis that this case challenges Minasian's actions taken while acting under an officer of the United States, and moved to dismiss. Stirling sought to remand the case back to state court, contending that Minasian is not entitled to removal under 28 U.S.C. § 1442(a)(1), because when Minasian is serving in the California Army National Guard he is subject to state laws and state control. *See* NGR 500-5 § 10-3(a).

The district court denied Stirling's motion to remand and then dismissed the entire case on the ground of issue preclusion, reasoning that the same issues had already been resolved against Stirling in his earlier, similar case against a different JAG colleague. On appeal, Stirling challenges only the denial of remand. While Stirling's reasons for wanting Minasian declared unqualified to serve as a JAG attorney in California are not clear, Stirling's desire to have the dispute

resolved in California state court is apparent. He cannot achieve this, however, because Minasian was "acting under" an officer of the United States, so removal to federal court was proper.

Members of the California Army National Guard, like their counterparts in other states, serve both the state in which they are located, as well as the federal government when needed. *See Bowen v. Oistead*, 125 F.3d 800, 802 n.1 (9th Cir. 1997). Members simultaneously enlist in the state National Guard and in the National Guard of the United States. *See Perpich v. Dep't of Def.*, 496 U.S. 334, 345 (1990) (describing dual enlistment provisions enacted after WWI). When members are called into federal active duty status, they serve pursuant to Title 10 of the United States Code ("Armed Forces"), which pertains to all active duty members of the armed services of the United States. *See* 10 U.S.C. § 101(d)(1) (defining "active duty").

When members are not on federal active duty, they are in federal reserve status. *Bowen*, 125 F.3d at 804 n.4. One form of federal reserve status is service in a "hybrid" status pursuant to Title 32 of The United States Code ("National Guard"), in which members provide military support as state National Guard members under state control while also in the service of the federal government and funded by the federal government. *See* 10 U.S.C. § 101(d)(5) (defining "full-time National Guard duty" service pursuant to provisions of Title 32); *Stirling v. Brown*, 227 Cal. Rptr. 3d 645, 651 (Ct. App. 2018) ("Title 32 status is a hybrid in that a National Guard member operates under state active duty and under state control but in the service of the federal government. While under title 32 status, the National Guard service member is on state active duty funded by the federal government, but authorized, organized, implemented and

administered by the state."). As we explained in *Bowen*, the Title 32 "hybrid" program is "authorized by federal statute and [was] created to provide full-time military support personnel to assist in the administration of the National Guard of the various states." 125 F.3d at 802 (citation omitted). Both Stirling and Minasian are JAG officers and Title 32 Guard members, serving pursuant to 32 U.S.C. § 502(f).

Aside from federal active duty pursuant to Title 10 and hybrid duty pursuant to Title 32, a member of a state National Guard may also serve in a non-hybrid form of state active duty. Such members act "under state control for state purposes" and—unlike those on Title 32 hybrid duty—"at state expense." *Brown*, 227 Cal. Rptr. 3d at 650 (quoting NGR 500-5 § 10-2(a)). This case does not involve anyone serving in this capacity.

Title 32's introductory sections epitomize the hybrid nature of the National Guard. The initial section establishes that National Guard members serving under Title 32 are trained and organized at the expense of the federal government in order to provide for the common defense, pursuant to Article I, Section 8, Clause 16 of the Constitution. 32 U.S.C. §§ 101(4), 101(6). The next section explains that the Army National Guard exists to ensure that the strength of the United States Army be maintained at all times and that the Army National Guard must be made available for active duty service during emergencies. *Id.* § 102. That purpose is mirrored in Title 10's description of the Army Reserve. *See* 10 U.S.C. § 10102 (the Army reserve is "to provide trained units and qualified persons available for active duty in the armed forces, in time of war or national emergency").

National Guard regulations embody the hybrid nature of Title 32 service. The key regulation is NGR 500-5 § 10-3(a). It provides that Title 32 members are "employed in the service of the United States for a primarily federal purpose," but while in reserve status under Title 32 they operate "under the command and control of the state and thus in a state status." NGR 500-5 § 10-3(a) (quotation marks omitted). Subsection (c) of the regulation provides historical examples of Title 32 National Guard members ordered to emergency federal duty. National Guard members were needed to provide "security at many of the nation's airports after September 11, 2001," and to participate "in Hurricanes Katrina and Rita-related disaster relief operations." *Id.* § 10-3(c).

The case law therefore recognizes that when called into active federal service, National Guard members are under federal control, but when they are in reserve status under Title 32, they operate under state control. *See, e.g., Clark v. United States*, 322 F.3d 1358, 1366 (Fed. Cir. 2003) ("[M]embers of the National Guard only serve the federal military when they are formally called into the military service of the United States. At all other times, National Guard members serve solely as members of the State militia under the command of a state governor."); *United States v. Hutchings*, 127 F.3d 1255, 1258 (10th Cir. 1997) (same); *Knutson v. Wis. Air Nat'l Guard*, 995 F.2d 765, 767 (7th Cir. 1993) (same).

Accordingly, Stirling's major argument in this case is that because National Guard members in reserve status are under state control, Minasian's practice of law must be solely a matter of state interest, with his appointment and practice traceable only to state law and not to any federal authority or federal officials. We disagree.

We considered the status of Title 32 National Guard members in *Bowen*, 125 F.3d 800. The issue was whether immunity under the *Feres* doctrine barred the suit of a Title 32 Alaska Air National Guard member against the Alaska National Guard, among other defendants. *Id.* at 802–03. The *Feres* doctrine prohibits members of the armed services from suing the federal government for injuries that resulted from their duties. *Feres v. United States*, 340 U.S. 135, 146 (1950). The plaintiff sought damages for, among other things, wrongful termination and contended that the *Feres* doctrine could apply only if he had been serving the federal government in Title 10 active duty status. *Bowen*, 125 F.3d at 804. We held *Feres* immunity applied, because of state National Guards' "integral role" in "the nation's defense force and the substantial degree to which the state National Guards are financed, regulated, and controlled by the federal government even when not called into active federal service." *Id.* at 805.

The issue in this case involves removal. Removal was proper if this is "[a] civil action or criminal prosecution" and Minasian demonstrated he was "acting under" an officer of the United States. *See* 28 U.S.C. § 1442(a)(1). As an initial matter, we reject Stirling's argument that this is not a "civil action or criminal prosecution." As used in 28 U.S.C. § 1442, that term "include[s] any proceeding . . . to the extent that in such proceeding a judicial order . . . is sought or issued." *Id.* § 1442(d)(1). Here, Stirling filed a petition "asking the Orange County Superior Court to file an application with the Fresno County Superior Court seeking assumption by the Fresno County Superior Court over Lawrence Minasian's practice of law" pursuant to California Business & Professions Code section 6126.3. That statute, one of California's provisions enforcing the ban on the unauthorized practice of law, describes a process by which a

superior court, in the county where a person is practicing law without a license, can assume jurisdiction over that person's practice. *See* Cal. Bus. & Prof. Code § 6126.3(e). Stirling's invocation of this statute shows that he ultimately seeks, at a minimum, a judicial order assuming jurisdiction over Minasian's practice. *See id.*

Stirling relies on statements in unrelated case law that describe "disciplinary proceedings heard by the [California] State Bar Court" as "*sui generis*, neither civil nor criminal in character." *See In re Rose*, 993 P.2d 956, 440 (Cal. 2000) (quoting *Yokozeki v. State Bar*, 521 P.2d 858, 865 (Cal. 1974)). But, even if that could mean that some attorney disciplinary proceedings adjudicated by the California State Bar Court are not covered by the definition of "civil action or criminal prosecution" in 28 U.S.C. § 1442—an issue we do not decide—Stirling's argument fails because this action does not involve a disciplinary proceeding before the California State Bar Court. *Cf. In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 467 (3d Cir. 2015) (motions by the Commonwealth of Pennsylvania seeking to disqualify their opposing counsel "are not attorney disciplinary proceedings").

As to whether Minasian was "acting under" a federal officer, this statutory language "must be 'liberally construed'" in favor of removal. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). There is a three-part inquiry when assessing the propriety of a removal under this provision. *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). That test requires that the "defendant in a state court action . . . 'demonstrate that (a) it is a person within the meaning of the statute; (b) there is a causal nexus

between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense.'" *Id.* (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)). Each part of this test is satisfied here.

*First*, as Stirling does not dispute, Minasian is a "person" within the meaning of the statute. *See* 1 U.S.C. § 1 (noting "person" includes "individuals").

*Second*, there is a causal nexus between Stirling's claims and Minasian's actions pursuant to a federal officer's directions. Our inquiry focuses on whether Minasian was involved in "an effort to assist, or to help carry out, the duties or tasks of [a] federal superior." *Watson*, 551 U.S. at 152 (emphasis omitted). The relationship between someone acting under a federal officer and the federal officer "typically involves 'subjection, guidance, or control.'" *Fidelitad*, 904 F.3d at 1099 (quoting *Watson*, 551 U.S. at 151). "[E]xtensive 'federal regulation alone'" is insufficient. *Riggs v. Airbus Helicopters*, 939 F.3d 981, 987 (9th Cir. 2019) (quoting *Fidelitad*, 904 F.3d at 1100), *petition for cert. filed*, No. 19-1158 (U.S. Mar. 20, 2020).

Here, the record reflects that Minasian was directly supervised by Colonel Timothy Rieger, a federal Title 10 officer who serves as the Chief of the Army National Guard Trial Defense Service. There is no dispute that Colonel Rieger is an officer of the United States. And Colonel Rieger's declaration establishes that Minasian was practicing law in California—and doing so without being a member of the California Bar—pursuant to his orders from federal superiors including Colonel Rieger. After explaining that he serves under federal orders pursuant to Title 10, Colonel Rieger stated,

> I am LTC Minasian's direct supervisor. I rate his performance and oversee his day to day work and assign him tasks. I am also required to ensure that he conforms to the military rules of professional responsibility . . . . No State officer conducts such oversight over LTC Minasian's practice.

Rieger Decl. ¶ 6.

Minasian's practice reflects the type of federal supervision and management envisioned by the applicable federal regulations and guidance. Regional Defense Counsel in TDS, including Minasian, are JAG attorneys who provide legal defense services to Title 32 National Guard members. *See* NGR 27-12 § 1-1. Title 10 federal officers appoint TDS Regional Defense Counsel. Dep't of the Army, Legal Support to the Operational Army, Field Manual 1-04 App'x B § B-2 (2013) ("FM 1-04"). Additionally, Title 10 officers supervise and evaluate TDS attorneys. National Guard regulations describe that the Chief of the Army National Guard TDS, who is a Title 10 federal officer, is responsible for "[t]echnical supervision, management, direction, and legal defense training for all members of the [Army National Guard] TDS while in a Title 32 . . . status." NGR 27-12 § 1-4(e)(2).

National Guard regulations also provide that TDS attorneys like Minasian may serve "a Federal function not subject to regulation by the States." NGR 27-12 § 2-2(a). As a Regional Defense Counsel representing National Guard members in adverse administrative actions, investigations, or inquiries, Minasian does not appear in California civil court or any other state court, and he performs legal work pursuant to federal regulation. *See generally* NGR 27-12.

And, crucially, this case presents a challenge to actions that directly applicable federal regulations authorized Minasian to perform "regardless of" his "states of licensure." *See id.* § 2-1. For these reasons, the causal nexus requirement is met.

*Third*, Minasian has raised a colorable federal defense under the Supremacy Clause. As discussed, Minasian was appointed by and reports to a federal officer and is permitted by federal regulation to practice law, in a specific and limited capacity, without becoming a member of the California Bar. Minasian has a colorable defense that this federal regulatory scheme preempts a claim by a private individual that would have the effect of invalidating those federal regulations in states, like California, that do not require all TDS attorneys to become members of the California Bar. We do not express a view on whether this defense is "in fact meritorious"; we hold only that it is "colorable." *See Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014). We also express no view on whether a similar defense would be colorable against a claim brought in a state that *does* expressly require membership in its bar as a condition of JAG service in that state's National Guard. *See, e.g.,* Ariz. Rev. Stat. § 26-1006(A)-(B); Nev. Rev. Stat. § 412.264(1)-(2).

The provisions of 28 U.S.C. § 1442(a)(1) allow for removal of an action against the United States, an officer of the United States, or an individual acting under such U.S. officer. As the relevant laws, regulations, and record in this case all demonstrate, a Title 10 federal officer supervises Minasian's work pursuant to federal regulation. Thus, a federal forum must be available to Minasian to defend against this action.

Because Minasian properly removed this action as someone "acting under" a federal officer, we need not decide whether the United States itself is appropriately viewed as a "real party in interest" defendant to the case, or whether the case was removable under the statute that is specific to removal by members of the armed forces of the United States, 28 U.S.C. § 1442a.

The district court correctly denied Stirling's motion to remand the matter to California state court, because Minasian was "acting under" a federal officer within the meaning of 28 U.S.C. § 1442(a)(1).

**AFFIRMED.**