FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNETH LAKE; CRYSTAL LAKE;
KYLE PAHONA; RYAN WILSON;
HEATHER WILSON; ASHLEY
MOSELEY; TIMOTHY MOSELEY,
         *Plaintiffs-Appellants*,

      v.

OHANA MILITARY COMMUNITIES,
LLC; FOREST CITY RESIDENTIAL
MANAGEMENT, INC.,
         *Defendants-Appellees*.

No. 19-17340

D.C. No.
1:16-cv-00555-
LEK-KJM

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted February 3, 2021
Honolulu, Hawaii

Filed September 27, 2021

Before: Richard R. Clifton, Ryan D. Nelson, and
Daniel P. Collins, Circuit Judges.

Opinion by Judge R. Nelson

## SUMMARY[*]

### Federal Jurisdiction

The panel reversed the district court's order denying plaintiffs' motion to remand an action to state court, vacated all subsequent district court decisions for lack of jurisdiction, and remanded with instructions to remand to state court.

Military servicemember families sued Ohana Military Communities, LLC, and Forest City Residential Management, Inc., in Hawaii state court, alleging state law claims based on defendants' failure to provide residential tenants with notice of pesticide contamination and remediation efforts on Marine Corps Base Hawaii. Defendants removed the action to federal court based on federal jurisdiction.

The panel held that federal jurisdiction did not exist because, first, under the Hawaii Admission Act, the State of Hawaii had concurrent legislative or political jurisdiction over Marine Corps Base Hawaii, and so state law had not been assimilated into federal law. Second, the panel rejected a rule that, regardless of any concurrent state jurisdiction, federal jurisdiction exists where federally owned or controlled land is involved, and a substantial federal interest exists. Third, the panel held that there was no federal officer or agency jurisdiction because there was no causal nexus between the Navy and Ohana under 28 U.S.C. § 1442, and Ohana was not a federal agency for purposes of federal

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

jurisdiction.  Finally, under the *Gunn* test, no federal issue was "necessarily raised."

## COUNSEL

P. Kyle Smith (argued), Law Office of Kyle Smith, Kailua, Hawaii; Terry Revere, Revere & Associates, Kailua, Hawaii; for Plaintiffs-Appellants.

Randall C. Whattoff (argued), Kamala S. Haake, and Christine A. Terada, Cox Fricke LLP, Honolulu, Hawaii, for Defendants-Appellees.

## OPINION

R. NELSON, Circuit Judge:

We are asked to decide whether federal subject matter jurisdiction exists and whether the district court properly denied Plaintiffs' motion to remand to state court.  The district court held federal jurisdiction exists because Plaintiffs' state law claims implicated a federal interest in military housing.  We reject the asserted grounds for federal jurisdiction and reverse, vacate, and order remand to state court.

I

Defendants-Appellees Ohana Military Communities, LLC ("Ohana") and Forest City Residential Management, Inc. (collectively, "Defendants") began a major housing construction project on Marine Corps Base Hawaii ("MCBH") in 2006.  Because MCBH was allegedly widely

contaminated with pesticides potentially impacting human health, Defendants developed and implemented a Pesticide Soil Management Plan ("Plan").  Defendants allegedly never informed residential tenants of the Plan, the decade-long remediation efforts, or known pesticide contamination at MCBH.  Plaintiffs-Appellants Kenneth Lake, Crystal Lake, and other military servicemember families (collectively, "Plaintiffs") filed an action in Hawaii state court alleging 11 different claims under state law.  Defendants removed to federal court.  The district court denied Plaintiffs' motion to remand, which we review on this appeal from the subsequent judgment on the merits.

We begin in 1959 when Hawaii was admitted as the 50th state.  Act to Provide for the Admission of the State of Hawaii into the Union, Pub. L. No. 86-3, 73 Stat. 4 (1959) ("Admission Act").  The United States reserved "the power of exclusive legislation, as provided by" the Enclave Clause of the U.S. Constitution,[1] over "tracts or parcels of land as, immediately prior to the admission of said State, are controlled or owned by the United States and held for Defense or Coast Guard purposes." *Id.* § 16(b); *see also id*. § 7(b) (providing for popular referendum approving, *inter alia*, Hawaii's consent to the U.S.'s reserved rights and powers); Proclamation 3309, 24 Fed. Reg. 6868 (Aug. 25, 1959) (affirming approval of referenda and declaring Hawaii's admission to the Union).    Before Hawaii's

---

[1] The Enclave Clause states "Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings . . . ." U.S. Const. Art. 1, § 8, cl. 17. "Exclusive legislation" means exclusive legislative jurisdiction. *See Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930).

admission, MCBH was both owned by the United States and used for military purposes.  *See, e.g.*, John Gunther, *Our Pacific Frontier*, 18 Foreign Affairs 583, 595 (1940).

However, the Admission Act also granted Hawaii concurrent jurisdiction over these lands.  Section 16(b) provided that the federal reservation of authority "shall not operate to prevent such lands from being a part of the State of Hawaii, or to prevent [Hawaii] from exercising over or upon such lands, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority."  Admission Act, § 16(b). Congress then added a second proviso "[t]hat the United States shall continue to have sole and exclusive jurisdiction over such military installations as have been heretofore or hereafter determined to be critical areas as delineated by the President of the United States and/or the Secretary of Defense."  *Id.* § 16(b).

In 1996, Congress undertook the Military Housing Privatization Initiative ("MHPI") to privatize military housing, allowing private companies to own and manage housing on military installations.  *See generally* National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, § 2801(a)(1), 110 Stat. 186, 544–51 (codified at 10 U.S.C. §§ 2871–85).  Servicemembers such as Lake receive a Basic Allowance for Housing ("BAH") with which "they can choose to live in private sector housing" off base "or privatized housing" on base.  *See, e.g.*, *Military Housing Privatization*, Off. of the Assist. Sec'y of Def. for Sustainment, https://bit.ly/3iFbvv3.

In 2004, Hawaiʻi[2] Military Communities, LLC ("HMC") and the Navy formed Ohana Military Communities, LLC as a Public Private Venture ("PPV"). Ohana was assigned the rights and obligations to a 50-year Initial Ground Lease subject to an operating agreement and a property management agreement. The Navy retained fee title ownership of the land and conveyed ownership of the residential units and future improvements for the lease term to Ohana through HMC. The Operating Agreement between HMC and the Navy gives "sole and exclusive management and control" of Ohana to HMC as the "Managing Member."

Before its new construction, Ohana developed its Pesticide Soil Management Plan in 2006. The Plan mandated that "[w]ritten notifications will be provided where residents and contractors may contact soils impacted with pesticides." The Navy reviewed and commented on later versions of the Plan, beginning in 2008. Ohana engaged in systematic cleanup efforts while demolishing old homes and building new ones over the next decade.

Ohana allegedly never informed existing or potential tenants of the Plan, its remediation efforts, or known pesticide contamination at MCBH. Ohana's Community Handbook given to new residents stated "[f]amilies can safely work and play in their yards." After lawsuits were filed, Ohana warned that children and pets should not be allowed to play and families should not grow fruits or vegetables in the yards near old house foundations.

In 2016, Plaintiffs filed an action in Hawaii state court alleging 11 different claims under state law, including

---

[2] The entity name uses this spelling, but we spell Hawaii consistent with the Admission Act.

contract, Hawaii Landlord Tenant Code, Hawaii Deceptive Acts or Practices ("UDAP"), negligence, intentional infliction of emotional distress, fraud and misrepresentation, unfair method of competition ("UMOC"), trespass, and nuisance claims.  Defendants removed the action to the District of Hawaii based on federal question jurisdiction under 28 U.S.C. §§ 1331 and 1442(a)(1).  Plaintiffs moved to remand to state court.

The district court denied Plaintiffs' motion to remand. The district court then granted Defendants' motion to dismiss the UDAP, UMOC, and trespass claims with prejudice.  Plaintiffs amended their complaint for the remaining claims.  After discovery, the district court granted Defendants' motion for summary judgment on all remaining claims except for some of Plaintiffs' nuisance claims regarding construction dust.[3]  The parties stipulated to dismiss those latter claims and Plaintiffs appealed.  We have appellate jurisdiction under 28 U.S.C. § 1291.

## II

"We review questions of statutory construction and subject-matter jurisdiction de novo."  *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020).  Removal is proper when the district court has original jurisdiction.  28 U.S.C. § 1441.  The parties agree there is no diversity jurisdiction under 28 U.S.C. § 1332.  Thus, to fit within § 1441, the removed claims here must "aris[e] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see Gunn v. Minton*, 568 U.S. 251, 257 (2013).  To support

---

[3] We do not reach Plaintiffs' arguments on the district court's rulings on the UMOC, deceit, and contract claims.  The district court lacked jurisdiction to consider any of Plaintiffs' state law claims.

removal under § 1442, the removing party "must show that (1) it is a 'person' within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [it] took pursuant to a federal officer's direction, and (3) it has a 'colorable' federal defense to plaintiffs' claims." *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citation omitted).

III

"A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). "Removal and subject matter jurisdiction statutes are 'strictly construed . . . .'" *Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014) (quoting *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008)).

Generally, a "defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Id.* (quoting *Luther*, 533 F.3d at 1034). Though the federal officer and agency removal statute, 28 U.S.C. § 1442, is read "broadly in favor of removal," *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006), Defendants still "bear[] the burden of proving by a preponderance of the evidence that the colorable federal defense and causal nexus requirements for removal jurisdiction" are factually supported. *Leite*, 749 F.3d at 1122. Defendants have not met their burden to show federal jurisdiction over Plaintiffs' state law claims based on their asserted grounds.

First, state law has not been assimilated into federal law, because Hawaii has concurrent legislative jurisdiction over

MCBH.  *See Pratt v. Kelly*, 585 F.2d 692, 695 (4th Cir. 1978).  Second, the district court's novel ground for subject matter jurisdiction is unsupported.  Third, there is no federal officer or agency jurisdiction because there is no causal nexus under 28 U.S.C. § 1442, *see Durham*, 445 F.3d at 1251, and Ohana is not a federal agency, *see In re Hoag Ranches*, 846 F.2d 1225, 1227–28 (9th Cir. 1988).  Fourth, no federal issue was "necessarily raised."  *Gunn*, 568 U.S. at 258.  Thus, this case must be remanded to state court.

## A

We first address whether Hawaii has concurrent legislative (also known as political) jurisdiction over MCBH.  "Jurisdiction, it has been observed, is a word of many, too many, meanings."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) (internal quotation marks and citations omitted).   It is important not to "confuse[] the *political* jurisdiction of a State with its *judicial* jurisdiction."  *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482 (1981) (emphases added); *compare Territorial Jurisdiction*, *Black's Law Dictionary* 1642 (4th ed. 1951) ("Territory over which a government or subdivision thereof has jurisdiction."), *with Jurisdiction*, *Black's Law Dictionary* 991 (4th ed. 1951) ("[T]he authority by which courts and judicial officers take cognizance of and decide cases").  Federal courts generally have no judicial jurisdiction under 28 U.S.C. § 1331 to hear state law claims––even where there is concurrent state-federal legislative (*i.e.* political) jurisdiction—where the state claims do not arise under federal law.  *See Gulf Offshore Co.*, 453 U.S. at 481.

The Admission Act reserves the power of exclusive legislation under the Enclave Clause, but also permits Hawaii to exercise concurrent jurisdiction, while reserving the United States' right to exercise exclusive jurisdiction

over areas it designates as critical. Because the United States has not designated MCBH as a critical area, Hawaii's concurrent legislative jurisdiction continues to apply here.

Defendants argue that any event occurring on a federal military installation presents a federal question. But Defendants' "locus" theory ignores Congress's express decision to allow Hawaii to exercise concurrent jurisdiction notwithstanding Congress's formal retention of "the power of exclusive legislation." Admission Act, § 16(b). Hawaii's concurrent legislative jurisdiction over MCBH means that the "locus" theory does not apply. *See James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 100 (1940); *Pratt*, 585 F.2d at 695.

1

We first address Hawaii's concurrent legislative jurisdiction over MCBH. Subject to specified exceptions, the federal government ceded its land to Hawaii's new state government in the Admission Act. Admission Act, §§ 5(b), (c); *see also Hawaii v. Off. of Hawaiian Affs.*, 556 U.S. 163, 168 (2009). The United States reserved the power of exclusive legislation under the Enclave Clause over military areas including MCBH. Admission Act, § 16(b). The Act then permitted Hawaii to exercise any concurrent jurisdiction "which it would have in the absence of such reservation of [exclusive] authority," so long as it does so "consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority." *Id.* However, the President or Secretary of Defense could delineate a military area as "critical" to revoke Hawaii's concurrent jurisdiction. *Id.* This reading is supported by the statutory structure and text, relevant judicial precedent, and the federal government's own understanding of the Admission Act.

First, we read the Admission Act as a whole. *See Beecham v. United States*, 511 U.S. 368, 372 (1994). Considering the whole structure, we read the Admission Act in the order it was written: Congress reserved the power of legislative jurisdiction, but then permitted Hawaii to exercise concurrent jurisdiction, subject to future congressional control. But the President or the Secretary of Defense may at any time reassert "sole and exclusive jurisdiction" over military installations by delineating them as "critical areas." *See* Admission Act, § 16(b).

Second, judicial precedent favors reading the Admission Act to grant Hawaii concurrent jurisdiction over non-critical areas. Three years before the Admission Act, the Supreme Court held that Congress may permit the States some measure of concurrent jurisdiction over federal lands held under Enclave Clause authority. *See Offutt Hous. Co. v. Sarpy Cnty.*, 351 U.S. 253, 260–61 (1956). We presume "that Congress . . . was aware of the settled judicial construction." *Shapiro v. United States*, 335 U.S. 1, 16 (1948). Congress, "in the exercise of this power" of exclusive legislation under the Enclave Clause, thus permitted Hawaii to exercise concurrent jurisdiction over MCBH. *See Offutt Hous. Co.*, 351 U.S. at 260–61. Congress did not "relinquish[] this power" of exclusive legislation by allowing Hawaii tort and contract law to apply here. *See id.* at 260. These military areas remain federal land, over which Congress has permitted Hawaii to exercise concurrent jurisdiction.

Third, the federal government recognized that it granted concurrent jurisdiction to Hawaii. For example, in 1969, the Department of Justice stated that "Navy properties in those States [of Hawaii and Alaska,] in accord with provisions of both statehood acts, are held in concurrent jurisdiction."

U.S. Dep't of Just., *Federal Legislative Jurisdiction: Report Prepared for U.S. Public Land Law Review Commission* 117 (1969) ("1969 DOJ Report"). The federal government understood the Admission Act to permit Hawaii to exercise concurrent jurisdiction over these federal lands.

We have not found evidence that MCBH is such a designated "critical area." *Cf.* 1969 DOJ Report at 125 ("No Air Force installations [in Hawaii] have been delineated as critical areas . . . ."). A general designation of military installations as "critical infrastructure" is insufficient. *See, e.g.*, *Tharp v. Alutiiq Pac., LLC*, No. CV 18-00135 KJM, 2018 WL 6628945, at *8 (D. Haw. Sept. 10, 2018). There has been no "formal" pronouncement of the sort contemplated by the Act. *See Adams v. United States*, 319 U.S. 312, 314 (1943). As such, the United States allowed Hawaii to assert concurrent legislative power over MCBH when it became a state.

2

Where the United States acquires exclusive jurisdiction under the Enclave Clause and does not permit any exercise of state concurrent jurisdiction, the general rule is that those state-law "rules existing at the time of the surrender of sovereignty" to the United States will continue to "govern the rights of the occupants of the territory transferred." *James Stewart*, 309 U.S. at 99; *see also id*. at 100 ("Since only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area."); *see generally Chicago, Rock Island & Pac. Ry. Co. v. McGlinn*, 114 U.S. 542, 546–47 (1885). In such circumstances, "those state laws which are effective within the enclave 'lose their character as laws of the state and become laws of the Union.'" *Celli v. Shoell*, 40 F.3d 324, 328 n.4 (10th Cir.

1994) (quoting *Stokes v. Adair*, 265 F.2d 662, 665 (4th Cir. 1959)). The question here is whether the same federalization of state law applies when Congress retains exclusive jurisdiction over an area under the Enclave Clause but then, in the exercise of that jurisdiction, allows current state law to be applied within that area. We conclude that it does not.

Because Hawaii maintained broad and ongoing concurrent legislative jurisdiction over MCBH, there is no reason to treat the resulting state laws as if they were assimilated into federal law. *See Pratt*, 585 F.2d at 695. The federalization of then-existing state-law rules upon the creation of a federal enclave rests on the premise that, precisely because Congress has excluded all exercise of state jurisdiction, the only laws that can apply are federal, and federal law will be deemed to incorporate existing state law in order to ensure "that no area however small will be left without a developed legal system for private rights." *James Stewart*, 309 U.S. at 100. This rationale has no application when, as here, Congress has expressly allowed concurrent state legislative jurisdiction subject to Congress's reservation of ultimate authority. Hawaii's concurrent jurisdiction means state law governing Plaintiffs' state claims is still Hawaii law—not federal law. Hawaii law has not been assimilated into federal law. Congress did not transmute Hawaii law into federal law by permitting Hawaii to exercise concurrent jurisdiction over military installations. No one believed that Congress federalized Nebraska tax law by permitting state taxation of military housing while otherwise retaining Enclave Clause jurisdiction. *See Offutt Hous. Co.*, 351 U.S. at 260–61. Nor did Congress otherwise adopt the state law at issue as federal law, as it has for other laws. *See, e.g.*, 28 U.S.C. § 5001; 18 U.S.C. §§ 7(3), 13; 43 U.S.C. § 1333(a)(2)(A).

Therefore, federal question jurisdiction is lacking on this basis.

3

The district court's decision below relied on *Federico v. Lincoln Military Housing*, 901 F. Supp. 2d 654 (E.D. Va. 2012), in finding a novel ground for subject matter jurisdiction.   The   district   court   essentially   adopted *Federico*'s reasoning, which found federal jurisdiction "where concurrent jurisdiction over claims arising on a federal enclave exists, and matters involve substantial federal interests such that a federal question is presented." *Id.* at 675; *see also Lake v. Ohana Mil. Communities*, No. CV 16-00555 LEK, 2017 WL 11515424, at *10–13 (D. Haw. Mar. 15, 2017).  *Federico* (and the district court by adoption), however, misread our precedent in *Durham*, 445 F.3d at 1250, and *Willis v. Craig*, 555 F.2d 724, 726 (9th Cir. 1977) (per curiam), to broadly apply "to cases of full concurrent jurisdiction as well." *Federico*, 901 F. Supp. 2d at 666.  The district court here thus created a new rule: federal question jurisdiction exists where (1) federally owned or controlled land is involved—even if the state has full concurrent jurisdiction and state laws have not assimilated into federal law; and (2) a substantial federal interest—not meeting any of the other *Gunn* factors—exists. *See Lake*, 2017 WL 11515424, at *11.

But the broad concurrent legislative jurisdiction over MCBH distinguishes this case from others dealing with exclusive federal jurisdiction.  We have only found federal question jurisdiction in enclaves in which Congress has not permitted concurrent jurisdiction, and we have not extended that rule to federal land that is subject to broad state concurrent jurisdiction.  *See Durham*, 445 F.3d at 1250;

*Willis*, 555 F.2d at 726; *see also Macomber v. Bose*, 401 F.2d 545, 546 & n.2 (9th Cir. 1968).

*Durham*, for instance, dealt with a fully exclusive jurisdiction federal enclave. We stated, "[f]ederal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" 445 F.3d at 1250. This statement is generally true for federal enclaves where there is no state concurrent jurisdiction. Here, however, we deal with an enclave where Congress has explicitly permitted state concurrent jurisdiction. Thus, *Durham* does not apply; its statement is aptly read to only apply to exclusive jurisdiction federal enclaves with no concurrent state jurisdiction.

Likewise, the cases *Durham* cited also dealt with exclusive jurisdiction federal enclaves. The Navy base in *Willis* was either an exclusive jurisdiction federal enclave or not an enclave at all, depending on whether it had been purchased by the federal government and ceded by California. *See* 555 F.2d at 726. We remanded to determine jurisdiction because "[n]either party discussed subject matter jurisdiction" and after a "thorough[] search[] [of] the record" there remained "unresolved and disputed facts surrounding this question." *Id.* In a footnote, we noted "no quarrel with the propriety of enclave jurisdiction in this case (if the facts support it), even though the state courts may have concurrent jurisdiction." *Id.* at 726 n.4. This dictum pertains to concurrent judicial jurisdiction—not concurrent legislative political jurisdiction at issue here. *See Gulf Offshore Co.*, 453 U.S. at 482.

Likewise, *Macomber* dealt with an area of "[s]ole and exclusive jurisdiction" where all state laws were assimilated in federal law. 401 F.2d at 546 & n.2.

The district court's theory is unsupported by *Durham*, *Willis*, and *Macomber*, as explained above. Hawaii exercises broad concurrent legislative jurisdiction over MCBH. Thus, neither the locus theory nor the district court's theory applies to provide federal subject matter jurisdiction here.

B

Federal officer or agency jurisdiction under 28 U.S.C. § 1442 does not exist either. We discuss it since § 1442 was raised by the parties but not reached by the district court. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also Lake*, 2017 WL 11515424, at *13.

1

A civil action may be removed under § 1442 when the defendant shows: "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251 (citation omitted). Neither party disputes the first prong. Defendants focus their argument on "the causal nexus requirement" for removal. We conclude that there is no causal nexus here, and thus Ohana is not a federal officer for purposes of federal jurisdiction.

Defendants assert that the Navy exercised significant control over Ohana's housing by: (1) restricting the type of people able to access MCBH and occupy its housing; (2) providing BAH to servicemembers; and (3) retaining the right to consent to financial restructuring and replacement of the Property Manager and Asset Manager. Defendants also note the Navy commented on the Plan.

Our causal nexus analysis "focuses on whether [the defendant] was involved in an effort to assist, or to help carry out, the duties or tasks of [a] federal superior." *Stirling v. Minasian*, 955 F.3d 795, 800 (9th Cir. 2020) (internal quotation marks and citation omitted).   Thus, "[t]he relationship between someone acting under a federal officer and the federal officer typically involves subjection, guidance, or control."   *Id.* (internal quotation marks and citation omitted).  This relationship "must go beyond simply complying with the law."   *Goncalves By & Through Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1245 (9th Cir. 2017).  It is not enough that "the regulation is highly detailed and . . . the private firm's activities are highly supervised and monitored." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007).  In sum, "§ 1442(a)(1) d[oes] not allow removal simply because a federal agency 'directs, supervises, and monitors a company's activities in considerable detail.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1100 (9th Cir. 2018) (quoting *Watson*, 551 U.S. at 145).

No causal nexus exists.  Defendants do not argue that the Navy had control over Ohana's decision whether to disclose the pesticide contamination.  Indeed, HMC (not the Navy) has "sole and exclusive management and control" of Ohana. Thus, the "central issue" in the causal nexus analysis— whether a federal officer directed the defendant to take the action challenged—is unmet.   *See Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 987 (9th Cir. 2019) (citing *Fidelitad*, 904 F.3d at 1099).  The Navy's consent power over aspects of the housing arrangement does not change the result.  Requiring federal agency consent on collateral points "fall[s] within the simple compliance with the law

circumstance that does not meet the acting under standard." *Id.* at 989 (internal quotation marks and citations omitted).[4]

Defendants' alleged facts do not support federal officer removal. *See Watson*, 551 U.S. at 153; *Fidelitad*, 904 F.3d at 1100. Even though we "interpret section 1442 broadly in favor of removal," Defendants fail to meet at least one of the requirements for federal officer removal. *See Durham*, 445 F.3d at 1252.

2

Defendants additionally argue Ohana is a federal agency based on the Navy's partial ownership of Ohana. They assert removal was warranted under § 1442 authorizing "[t]he United States or any agency thereof" to remove actions to federal court.

We use a six-factor test for determining whether an entity falls within 28 U.S.C. § 451's definition of agency[5]:

> (1) the extent to which the alleged agency performs a governmental function; (2) the scope of government involvement in the organization's management; (3) whether its operations are financed by the government;

---

[4] Because no federal officer directed Ohana to take the challenged actions, we need not address Defendants' arguments that Ohana, by acting as a landlord, was performing acts delegated to it by the Navy.

[5] 28 U.S.C. § 451 defines "agency" as "any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless the context shows that such term was intended to be used in a more limited sense."

(4) whether persons other than the government have a proprietary interest in the alleged agency and whether the government's interest is merely custodial or incidental; (5) whether the organization is referred to as an agency in other statutes; and (6) whether the organization is treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act.

*In re Hoag Ranches*, 846 F.2d at 1227–28. None of the six *In re Hoag Ranches* factors support finding Ohana an "agency."

First, Ohana likely does not "perform[] a governmental function." *Id.* at 1227. Merely leasing housing to a servicemember cannot itself be a governmental function, since BAH can be used on or off a military base. Otherwise, every private housing (or other service) provider that leases to a servicemember would perform a governmental function.

Nor is leasing housing on a military installation under the MHPI necessarily a historically and exclusively governmental function. Congress enacted the MHPI to privatize military housing, allowing private companies to own and manage housing on military installations. *See* National Defense Authorization Act for Fiscal Year 1996, 110 Stat. at 544–52. And the Navy regards PPV housing as "owned by a private entity and governed by a business agreement in which the Navy has limited rights and responsibilities," where "[t]he private entity is entirely responsible for Construction[,] Renovation[, and] Maintenance." *See Privatized (PPV) Housing Program: Military Housing Privatization Initiative (MHPI)*,

Commander, Navy Installations Command, https://bit.ly/2UKtAQz ("PPV Website").[6] Certainly, there may be situations where leasing housing on a military installation might perform a governmental function. But Defendants have not shown that Ohana performs a governmental function in this specific factual context. Even if military housing on MCBH once was considered an exclusively federal governmental function, it is no longer. *See In re Hoag Ranches*, 846 F.2d at 1228.

Second, the federal government's "involvement in the organization's management" is limited. *See id.* at 1227. HMC has "sole and exclusive management and control" of Ohana as the "Managing Member." The Navy, as the "Government Member," generally has no management or control. The Navy also states it "has limited rights and responsibilities" over PPVs. *See* PPV Website. The Navy has only limited control here—such as choosing to identify Preferred Referrals, replacing a defaulting or failing Property Manager, or consenting to certain items such as annual budgets, or additional debt. We have found no control where the government withdrew its supervisory authority and "was removed from participation in day-to-day management," even though the corporation remained subject to federal regulation. *See In re Hoag Ranches*, 846 F.2d at 1228. Here, the government only ever had limited control. At most, this factor does not weigh heavily in either direction.

Third, Defendants do not provide evidence that Ohana's "operations are financed by the government," even if the

---

[6] We take judicial notice that the Navy has made these representations. *See* Fed. R. Evid. 201(b); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

Navy at one point financially contributed to Ohana's creation. *See id.* at 1227. An initial financial contribution does not show ongoing operational financing.

Fourth, Ohana does not directly address whether "persons other than the government have a proprietary interest in the alleged agency, and whether the government's interest is merely custodial or incidental." *See In re Hoag Ranches*, 846 F.2d at 1227–28. To the extent it disputes the fourth *In re Hoag Ranches* factor, Ohana's arguments are unconvincing. It fails to note that HMC, a non-federal person that is the Managing Member, has a "proprietary interest in the alleged agency." *See id.* at 1227. It does not explain how the government's interest is not "merely custodial or incidental" in light of HMC's managing interest in the residential units and future improvements over 50 years. *See id.* at 1227–28.

Defendants do not address the fifth and sixth factors, and arguments on these factors are waived. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986).[7] "In conclusion, . . . the balance tips toward treating" Ohana as a private entity, not as a federal agency. *See In re Hoag Ranches*, 846 F.2d at 1228–29 (finding a corporation was not

---

[7] Regardless, neither of these factors suggest Ohana is an agency. Ohana is not "referred to as an agency in other statutes." *See id.* at 1228. And Ohana is not "treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act." *See id.* Indeed, Ohana's residential leases' Choice of Law provision requires that "the contractual relationship . . . shall be constructed exclusively in accordance with, and shall be exclusively governed by the substantive laws of the State of Hawaii." Ohana's Operating Agreement similarly states that Ohana would be incorporated and registered "under the laws of the State of Hawaii."

a government agency even though "some factors weigh[ed] in favor of finding agency status").

C

Finally, a "special and small category" of state law cases may be brought in federal court. *Gunn*, 568 U.S. at 257–58 (citation omitted). This "less frequently encountered" category of federal question cases includes state law claims meeting certain requirements. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005); *see also Merrell Dow Pharms. Inc. v. Thompson,* 478 U.S. 804, 808 (1986). *Gunn* clarifies that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 568 U.S. at 258.

Defendants first argue that the *Gunn* test does not apply because federal jurisdiction requires only a substantial federal interest. But we have rejected this interpretation. *See California Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011) ("[C]ontrary to [the party's] suggestion, *Grable* did not implicitly overturn the well-pleaded complaint rule . . . in favor of a new 'implicate[s] significant federal issues' test." (internal citations omitted)).

Defendants then argue that a federal issue is necessarily raised because Plaintiffs' causes of action turn on the safety of military housing. But we have held a federal issue is not necessarily raised where the "actions are based entirely on [state] causes of action . . . , each of which does not, on its face, turn on a federal issue." *Id.* at 543. For jurisdiction to exist under the *Gunn* test, a "'right or immunity created by

the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.'" *Id.* at 541 (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936)); *see also Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 n.4 (2020) ("No element of the landowners' state common law claims necessarily raises a federal issue."). Defendants have failed to make that showing here. Instead, Defendants allege only that a policy interest—the safety of military housing—is implicated, and they point to no question of federal law. Because Defendants fail to satisfy the first *Gunn* prong, we need not address the other three.

IV

We reverse the district court's order denying the motion to remand, vacate all subsequent district court decisions for lack of jurisdiction, and remand with instructions to remand to state court.

**REVERSED, VACATED, AND REMANDED.**