**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FRANCISCO NEGRETE; WILLIAM BERGER; BRANDON HRAIZ; CRAIG TANAKA; JOSEF PHILLIPS, *Plaintiffs-Appellants*, <br><br> v. <br><br> CITY OF OAKLAND; POLICE COMMISSION OF THE CITY OF OAKLAND, *Defendants-Appellees*. | No. 20-16244 <br><br> D.C. No. 3:19-cv-05742-WHO <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted May 10, 2021
San Francisco, California

Filed August 19, 2022

Before: J. Clifford Wallace and Daniel P. Collins, Circuit
Judges, and Jed S. Rakoff,* District Judge.

---

*The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

Opinion by Judge Wallace;
Dissent by Judge Rakoff

**SUMMARY**[**]

### Civil Rights/Jurisdiction

In an action brought by five City of Oakland police officers seeking to overturn their termination, the panel vacated, for lack of subject matter jurisdiction, the district court's judgment on the pleadings in favor of defendants and remanded with instructions to remand this case to state court.

In March 2018, the officers were involved in the fatal shooting of a homeless man. The Oakland Police Department investigated the incident, concluding that the officers' use of force was reasonable and complied with Police Department policy. The Chief of Police agreed. Separately, the Community Police Review Agency (CPRA), the investigative body of the City's civilian oversight Police Commission, investigated the incident and determined that the use of force was objectively reasonable. Finally, the incident was also investigated by the Compliance Director, an individual who is independent of the Police Department but with temporary, limited oversight over it pursuant to a consent decree (the Consent Decree) reached in a different case, *Allen v. City of Oakland*, No. C00-4599 TEH (N.D. Cal.). The Compliance Director disagreed with the Chief of Police and the CPRA, instead recommending termination of

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the officers for unreasonable use of force.  Subsequently, the Commission decided to convene a "Discipline Committee" due to the Compliance Director's disagreement with the CPRA.  Following its review, the Discipline Committee agreed with the Compliance Director and directed termination.  As a result, the City terminated the officers.

After their termination, the officers sought a writ of mandate and declaratory relief in state court.  The officers alleged that the City and the Commission violated their obligations under the City's charter, the municipal code, and other sources of state law when the Commission assembled the Discipline Committee despite the consensus between the CPRA and the Chief of Police that there was no unreasonable use of force.  The City removed the case to federal court, invoking federal question jurisdiction under 28 U.S.C. § 1331.  After determining that there was no conflict between the City charter and the Consent Decree, the district court concluded that the City acted in compliance under both its charter and the Consent Decree and entered judgment in favor of the City.

The panel held that this was a case arising under state law that properly belonged in the state courts.  Recognizing that under § 1331, a case can "arise under" federal law in two ways, the panel determined that it lacked subject matter jurisdiction under both branches of federal question jurisdiction.

First, the panel lacked subject matter jurisdiction under the federal cause of action branch because federal law did not create the causes of action asserted.  Plaintiffs exclusively asserted state law causes of action.  The panel stated that the complaint correctly anticipated that the City, in defending against the officers' claims, would assert that

the Consent Decree, an agreement overseen and enforced by the federal district court, required the City to give effect to the Compliance Director's findings in the way that it did. But even assuming that such a contention by the City would raise a federal issue, it would not establish that federal law created the officers' claims.  It is settled law that a case may not be removed to federal court on the basis of a federal defense.  And that remains true even if, as here, the state-law complaint explicitly sought declaratory relief with respect to the anticipated federal defense.  Additionally, this action could not be characterized as equivalent to a motion under Federal Rule of Civil Procedure 60 to obtain relief from the terms of a federal consent decree, because the officers were not parties, or in privity with parties, to the *Allen* judgment, and their petition and complaint did not seek to challenge, enforce, or otherwise modify the terms of the Consent Decree or the federal court orders in *Allen*.

The panel next held that it lacked subject matter jurisdiction under the substantial federal question branch. The officers did not necessarily raise a federal issue in their petition and complaint and accordingly their claims fell outside the special and small category of state law causes of action arising under federal law.  The panel rejected the parties' contentions that a federal issue was necessarily raised because the officers were attacking a federal district court's consent decree.  Here, the officers were not parties, or in privity with parties, to the *Allen* action, and they were not directly attacking the Consent Decree.  Although there was a potential federal issue involving the question of how to resolve an alleged conflict between the Consent Decree and the City charter, it was not an essential element of any of the officers' claims.  At most, the officers anticipated that the City would rely on the Consent Decree, but a federal issue raised in anticipation of a defense was not sufficient to

establish federal question jurisdiction. Moreover, for federal question jurisdiction to extend to a declaratory judgment action, the claim itself must present a federal question independent of anything alleged in anticipation of a defense. Here, but for the federal issues identified in the officers' request for state declaratory relief, any potential federal issue would arise only as a defense to a state-created action.

Dissenting, Judge Rakoff agreed with the majority's statement of the legal conditions under which a case "arises under" federal law, but respectfully disagreed that the claims here did not meet those conditions. Because the officers' petition necessarily attacked a federal consent decree and determining the scope and meaning of the consent decree was necessary to decide this case, Judge Rakoff would hold that the officers' claims gave rise to a federal cause of action.

**COUNSEL**

Zachary A. Lopes (argued), Harry S. Stern, and Timothy K. Talbot, Rains Lucia Stern St. Phalle & Silver, PC, San Francisco, California, for Appellants.

Gina M. Roccanova (argued) and Yuki Cruse, Jackson Lewis P.C., San Francisco, California; Barbara J. Parker, City Attorney; Ryan G. Richardson, City Attorney; Oakland City Attorney's Office, Oakland, California; for Appellees.

**OPINION**

WALLACE, Circuit Judge:

In March 2018, five City of Oakland police officers were involved in the fatal shooting of a homeless man. The officers were fired for the incident, and they sought to overturn their termination in state court. The City then removed the case to federal district court, which granted judgment in favor of the City. The officers appeal from the district court's judgment.

But before we can review the district court's judgment, we must ensure that we do not exceed the scope of our subject matter jurisdiction, "*i.e.*, [our] statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Because subject matter jurisdiction "involves [our] power to hear a case," *United States v. Cotton*, 535 U.S. 625, 630 (2002), we "have an independent obligation to . . . raise and decide jurisdictional questions that the parties either overlook or elect not to press," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). "Consequently, defects in subject-matter jurisdiction require correction regardless of whether the error was raised in district court," and regardless of whether the parties agree that we have jurisdiction. *Cotton*, 535 U.S. at 630. We review de novo questions of subject matter jurisdiction. *Lake v. Ohana Mil. Cmtys., LLC*, 14 F.4th 993, 1000 (9th Cir. 2021). "Even where subject matter jurisdiction is otherwise lacking, we always have jurisdiction to determine our own jurisdiction." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018) (internal quotation marks and citation omitted). Because we lack subject matter jurisdiction and thus are powerless to adjudicate this case, we vacate the district court's judgment

and remand with instructions for the district court to remand this case to state court.

## I.

### A.

After the fatal shooting, an investigation ensued. The Oakland Police Department (the Police Department) investigated the incident, concluding that the officers' use of force was reasonable and complied with Police Department policy. The Chief of Police agreed. Separately, the Community Police Review Agency (CPRA), the investigative body of the City's civilian oversight Police Commission (the Commission), investigated the incident and determined that the use of force was objectively reasonable. Finally, the incident was also investigated by the Compliance Director, an individual who is independent of the Police Department but with temporary, limited oversight over it pursuant to a consent decree (the Consent Decree) reached in a different case, *Allen v. City of Oakland*, No. C00-4599 TEH (N.D. Cal.). The Compliance Director is authorized to direct disciplinary actions against officers to ensure compliance with the Consent Decree. Here, the Compliance Director disagreed with the Chief of Police and the CPRA, instead recommending termination of the officers for unreasonable use of force. Subsequently, and critically here, the Commission decided to convene a "Discipline Committee" due to the Compliance Director's disagreement with the CPRA. Following its review, the Discipline Committee agreed with the Compliance Director and directed termination. As a result, the City terminated the officers.

After their termination, the officers sought a writ of mandate and declaratory relief in state court. The officers

alleged that the City and the Commission (collectively, the City) violated their obligations under the City's charter (the Charter), the municipal code, and other sources of state law when the Commission assembled the Discipline Committee despite the consensus between the CPRA and the Chief of Police that there was no unreasonable use of force. The City removed the case to federal court, invoking federal question jurisdiction under 28 U.S.C. § 1331.

The City then moved for judgment on the pleadings. The City contended that it was required to reconcile its competing obligations under the Charter, the Consent Decree, and the district court's orders implementing the Consent Decree. The City maintained that the Commission's decision to convene the Discipline Committee to resolve the conflicting recommendations was necessary to satisfy these obligations. The officers cross-moved for judgment on the pleadings, asserting that the Consent Decree and the district court's implementing orders were not controlling because (1) they should be construed as not overriding the City's Charter obligations, and (2) to the extent that they did override the Charter, they were invalid. As to the latter point, the officers asserted that the Consent Decree could not lawfully override the Charter's requirements; nor could the City execute an agreement allowing it to violate its Charter. Reconciling the Charter's terms with the Consent Decree, the district court held that the Compliance Director, standing in the shoes of the Chief of Police, had the authority to convene the Discipline Committee. After determining that there was no conflict between the Charter and the Consent Decree, the district court concluded that the City acted in compliance under both the Charter and the Consent Decree, and it entered judgment in favor of the City.

**B.**

The City of Oakland, like many cities and counties in the United States, is governed by a charter.  In California, the provisions of a city's charter "have the force and effect of legislative enactments."   Cal. Const. art. XI, § 3(a).   A charter permits the city to "make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in [its] charter[] and in respect to other matters [it] shall be subject to general laws."  *Id.* § 5(a).  For instance, a charter may provide "the constitution, regulation, and government of the city police force."  *Id.* § 5(b).  Ultimately, a "city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."  *Id.* § 7.

The Police Department, in addition to being governed by the Charter, is subject to oversight from the district court under the terms of the Consent Decree.  The City entered into the Consent Decree in January 2003 after the *Allen* plaintiffs asserted Section 1983 claims, alleging violations of their civil rights due to a pattern and practice of misconduct by the City's police force, as well as deliberate indifference by the Police Department and its officers.  The Consent Decree included numerous tasks that the City and the Police Department would need to satisfy, including implementing reforms to the Police Department's policies on adjudicating and disciplining officers.   In December 2012, the court approved the *Allen* parties' negotiated plan to appoint a Compliance Director, who would have authority to oversee the City's and the Police Department's implementation and execution of new policies to comply with the Consent Decree.

Specifically, the district court ordered that:

The Compliance Director will have the authority to *direct specific actions* by the City or [Police Department] *to attain or improve compliance levels*, or *remedy compliance errors*, regarding all portions of the [Consent Decree] . . . , including but not limited to: . . . personnel decisions, including but not limited to . . . findings and disciplinary actions in misconduct cases and use-of-force reviews. . . .

In November 2016, the City's voters approved an amendment to the Charter titled "Measure LL," adding Section 604. Section 604 established the Commission and the CPRA to investigate claims of police misconduct. Section 604 also sets forth the procedure for investigating officer misconduct and any ensuing disciplinary determinations, as well as the Commission's oversight role over the CPRA and the Police Department. Section 604(f)(3) requires the CPRA to issue written findings after completing an investigation and propose disciplinary actions to the Commission and Chief of Police. If the Chief of Police agrees with the CPRA's findings and proposed discipline, Section 604(g)(1) provides that the Chief of Police then notifies the subject officer of the findings and the intent to discipline. However, if the Chief of Police disagrees with the CPRA's findings or proposed discipline, Section 604(g)(2) states that the Chief of Police and the CPRA shall submit their respective findings and/or proposed discipline to a Discipline Committee, consisting of three Commission members. Finally, Chapters 2.45 and 2.46 of the Municipal Code codified the investigatory and discipline determination provisions of Section 604. Once convened, the Discipline Committee is required to "resolve any dispute" between the

determinations of the Chief of Police and the CPRA, "solely on the record presented by the [CPRA] and the Chief."

In this case, the officers seek to overturn the Discipline Committee's decision to terminate them. The officers' first cause of action is a petition for traditional mandate directing the City to comply with Section 604 of the Charter and Chapters 2.45 and 2.46 of the Municipal Code. *See* Cal. Civ. Proc. Code § 1085. The officers argue that the City violated the Charter and the Municipal Code when it improperly ignored the determination of the Chief of Police and instead relied on the Compliance Director's review. In their view, the Discipline Committee lacked jurisdiction or authority to impose any disciplinary action. The officers' petition therefore requests a writ of mandate compelling the City to comply with the Charter and the Municipal Code and to exonerate formally each officer, as well as appropriate injunctive relief restraining the City from maintaining or imposing any disciplinary action on the officers.

The officers' second cause of action is a request for declaratory relief over the proper application of the statutory procedures set forth in Section 604 of the Charter and Chapters 2.45 and 2.46 of the Municipal Code. *See* Cal. Civ. Proc. Code § 1060. The officers seek a judicial declaration establishing that (1) the Committee may not assert jurisdiction to determine disciplinary action on Police Department sworn personnel based on a disagreement between the Compliance Director's and the CPRA's findings and proposed discipline, (2) the Compliance Director's findings and proposed discipline do not stand in place of the Chief of Police's findings and proposed discipline for investigations of alleged misconduct of Police Department sworn personnel, and (3) the Committee does not have authority to review material from outside the record

presented by the Chief of Police and the CPRA when making a disciplinary determination.

In the end, however, we do not have the authority to consider the merits of the officers' claims because we lack subject matter jurisdiction over this action.

## II.

Federal courts are courts of limited jurisdiction that "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Removal to federal court is generally proper only when the district court has original jurisdiction. *See* 28 U.S.C. § 1441. Because the parties in this case are non-diverse, the only avenue to federal court is if the parties can establish federal question jurisdiction under 28 U.S.C. § 1331.

Under 28 U.S.C. § 1331, federal courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "[A] case can 'arise under' federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (alteration omitted). First and "[m]ost directly, a case arises under federal law when federal law creates the cause of action asserted." *Id.*, *citing Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). This branch—suits raising federal causes of action—"accounts for the vast bulk of suits that arise under federal law." *Id.*

Second, under the substantial federal question branch, "even where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a 'special and small category' of cases in which arising under

jurisdiction still lies." *Id.* at 258, *quoting Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). Specifically, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*

For the following reasons, we lack subject matter jurisdiction under both branches of federal question jurisdiction.

## A.

First, we lack subject matter jurisdiction under the federal cause of action branch. Here, the officers do not allege any cause of action expressly created by federal law. Rather, the officers exclusively assert state law causes of action—for a writ of mandate under California Code of Civil Procedure § 1085 compelling the City to comply with Section 604 of the Charter and Chapters 2.45 and 2.46 of the Municipal Code, as well as for declaratory relief under California Code of Civil Procedure § 1060 that, notwithstanding the Consent Decree and related federal court orders, the Compliance Director's findings cannot substitute for those of the Chief of Police under the Charter and cannot give rise to the empanelment of a Discipline Committee.

To be sure, the officers' complaint correctly anticipated that the City, in defending against the officers' claims, would assert that the Consent Decree, an agreement overseen and enforced by the federal district court, required the City to give effect to the Compliance Director's findings in the way that it did. But even assuming that such a contention by the City would raise a federal issue, it would not establish that

federal law *creates* the officers' claims.  Such a federal ground for declining to comply with what the officers contend is the plain meaning of the Charter raises, at best, a federal defense to the officers' state law claims demanding compliance with the Charter.  *See also infra* at 17–18.  It is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987), *citing Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 12 (1983).  And that remains true even if, as here, the state-law complaint explicitly seeks declaratory relief with respect to the anticipated federal defense.  *See Franchise Tax Bd.*, 463 U.S. at 19, *citing Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950).

In removing the case, the City relied solely on *Baccus v. Parrish*, where the Fifth Circuit held that "[f]ederal jurisdiction is proper where a claim brought in state court seeks to attack or undermine an order of a federal district court."  45 F.3d 958, 960 (5th Cir. 1995).  At the outset, *Baccus* is not binding on our court.  Moreover, because *Baccus* was decided prior to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), it is not entirely clear whether *Baccus* follows the federal cause of action branch or the substantial federal question branch of federal question jurisdiction.  Regardless, the notion that there is federal jurisdiction simply because purely state law claims have collateral impact on a federal decree conflicts with current Supreme Court caselaw.  *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 31 (2002) (rejecting the view that the All Writs Act, or notions of ancillary jurisdiction, allow removal of "a state-court case in

order to prevent the frustration of orders the federal court has previously issued"); *Rivet v. Regions Bank of La.*, 522 U.S. 470, 477 (1998) (holding that, because federal claim preclusion is a defense, and not an aspect of a plaintiff's cause of action, it is "not a proper basis for removal"); *see also Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 261 (5th Cir. 2014) (noting, but not deciding, the question of whether "*Baccus* is still good law in light of *Rivet* and *Syngenta Crop Protection*"). Framed at such breadth, *Baccus* would not correspond to any recognized category of federal jurisdiction.

We have instead more narrowly recognized that, in some circumstances, a state court action may properly be characterized as asserting a disguised direct *federally created* cause of action, equivalent to a motion under Federal Rule of Civil Procedure 60, to obtain relief from the terms of a federal consent decree. *See Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 777–78 (9th Cir. 1994) (holding that district court properly "recharacterized" plaintiffs' claims as "federal claims" asserting an "independent action for relief from [a federal] judgment" on grounds of fraud, at least where plaintiffs sought to represent parties in privity with those represented in the prior judgment); *Villareal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir. 1976) (recharacterizing artfully pleaded state court action as a motion under Rule 60(b)(3) to amend federal court judgment involving same plaintiff and same subject). This ground of federal jurisdiction does not apply here, because the officers are not parties, or in privity with parties, to the *Allen* judgment, and their petition and complaint do not seek to challenge, enforce, or otherwise modify the terms of the Consent Decree or the federal court orders in *Allen*. The officers' petition and complaint simply seek compliance

with, and clarification of, the Charter and the Municipal Code.

Accordingly, we hold that we lack federal question jurisdiction under the federal cause of action branch because federal law does not create the causes of action asserted.

### B.

Second, we lack subject matter jurisdiction under the substantial federal question branch. This branch provides that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Jurisdiction is proper "[w]here all four of these requirements are met" because in such a case, "there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.*, *quoting Grable*, 545 U.S. at 313–14.

Here, the officers' action does not necessarily raise a federal issue in the way that *Grable* requires. We begin with the officers' first cause of action, a writ of traditional mandate directing the City to comply with Section 604 of the Charter and Chapters 2.45 and 2.46 of the Municipal Code. The parties contend that a federal issue is necessarily raised because the officers "are attacking a federal district court's consent decree." Not so. The officers were not parties, or in privity with parties, to the *Allen* action, and they are not directly attacking the Consent Decree. Instead, the officers allege that (1) the City violated the Charter and the Municipal Code when it improperly ignored the determination of the Chief of Police and relied on the

Compliance Director's review, (2) the City violated the plain language of Section 604 of the Charter in order to find a conflict between the CPRA and the Police Department's determinations, and (3) the Discipline Committee lacked jurisdiction or authority to impose any disciplinary action. Because the express terms of Section 604 and Chapter 2.45 state that the Discipline Committee can only be established when the Chief of Police and the CPRA are in disagreement, the argument goes, the City's process of review and termination violated state law. In addition, the officers argue that under the Charter and the Municipal Code, the Chief of Police strictly means the "Chief of Police of the Oakland Police Department," and neither the Charter nor the Municipal Code grants any authority to, or mentions, the Compliance Director appointed pursuant to the Consent Decree. Indeed, the officers' prayer for relief contains no request to enforce, modify, or otherwise challenge the terms of the Consent Decree at all. In the officers' view, they should have already been "formally exonerated" when both the Chief of Police and the CPRA agreed that their use of force was lawful and within Police Department policy. The officers merely request compliance with the Charter and the Municipal Code, as well as injunctive relief restraining any disciplinary action that resulted from a process that allegedly contravenes state law.

To be sure, there is a potential federal issue involving the question of how to resolve an alleged conflict between the *Allen* Consent Decree and the Charter. Although this question would inevitably arise in this case and may involve a federal issue, it is not an issue that is *necessarily raised* within the meaning of *Grable* because it is not an "essential *element*" of any of the officers' claims. *See Grable*, 545 U.S. at 314–15 (emphasis added). At most, it is a federal issue that may arise as a potential defense. In essence, the officers

anticipate that the City will contend that the relied-upon provisions of state law conflict with, and have been displaced by, the Consent Decree, and that the City is thus required to comply with the provisions of the Consent Decree.  In considering such a defense, the court would have to determine whether there is a conflict between the Consent Decree and the Charter, and if so, how to resolve that conflict.

Even assuming that these inquiries implicate questions of federal law, a federal issue raised in anticipation of a defense is not sufficient to establish federal question jurisdiction.  "[T]he question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'"  *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986), *quoting Franchise Tax Bd.*, 463 U.S. at 9–10.  "A defense that raises a federal question is inadequate to confer federal jurisdiction," *id.*, because whether an issue is necessarily raised depends on if it is "an essential element" of a plaintiff's claim, *Grable*, 545 U.S. at 315.  Indeed, "it is now settled law" that a federal defense to a state law cause of action cannot confer federal question jurisdiction.  *Caterpillar*, 482 U.S. at 393.

We next turn to the officers' second cause of action, a request for declaratory relief under California Code of Civil Procedure § 1060.  Although the officers seek a judicial declaration resolving several potential federal issues—such as establishing that the Discipline Committee may not assert jurisdiction to determine disciplinary action based on a disagreement between the Compliance Director and the CPRA, and that the Compliance Director does not stand in place of the Chief of Police for investigations of alleged misconduct of Police Department personnel—this does not alter our jurisdictional analysis.

"[F]ederal courts do not have original jurisdiction, nor do they acquire jurisdiction on removal, when a federal question is presented by a complaint for a state declaratory judgment, but *Skelly Oil* would bar jurisdiction if the plaintiff had sought a federal declaratory judgment." *Franchise Tax Bd.*, 463 U.S. at 19, *citing Skelly Oil*, 339 U.S. at 667. Indeed, the Supreme Court has held that in enacting the federal Declaratory Judgment Act, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil*, 339 U.S. at 671. Declaratory relief "could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts." *Id.* For federal question jurisdiction to extend to a declaratory judgment action, the "claim itself must present a federal question unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Id.* at 672 (internal quotation marks and citation omitted). Thus, "*Skelly Oil* has come to stand for the proposition that if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd.*, 463 U.S. at 16 (internal quotation marks and citation omitted). "[W]hile *Skelly Oil* itself is limited to the federal Declaratory Judgment Act, fidelity to its spirit leads us to extend it to state declaratory judgment actions as well." *Id.* at 18. In this case, but for the federal issues identified in the officers' request for state declaratory relief, any potential federal issue would arise only as a defense to a state-created action. *Cf. id.* at 16.

In sum, because the officers do not necessarily raise a federal issue in their petition and complaint, their claims fall outside the "special and small category" of state law causes

of action arising under federal law.  *Gunn*, 568 U.S. at 258 (citation omitted).

### III.

This is a case arising under state law that properly belongs in the state courts.  We recognize our decision today does not resolve the parties' dispute and it has been nearly three years that the parties have been before federal court.  But we are not free to disregard or evade the "limits upon federal jurisdiction, whether imposed by the Constitution or by Congress."  *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Because the district court does not have original jurisdiction, we vacate the district court's judgment and remand with instructions for the district court to remand this case to the state court from which it was improperly removed.

**VACATED and REMANDED with instructions to remand to state court.**

RAKOFF, District Judge, dissenting:

While I agree with the majority's statement of the legal conditions under which a case "arises under" federal law, I respectfully disagree that the claims here do not meet those conditions. Because the officers' petition necessarily attacks a federal consent decree, I would hold that their claims give rise to a federal cause of action.

It is well-settled that "[f]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-

state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). For a federal issue to be necessarily raised, it must form an "essential element" of a plaintiff's claims in the plaintiff's "well-pleaded complaint." *See Grable & Sons Metal Prods. Inc. v. Darue En'g & Mfg.*, 545 U.S. 308, 315–16 (2005). And federal jurisdiction cannot be conveyed on the basis of a federal defense, even if the defense is anticipated in the complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1978).

Here, there is plainly a federal issue that is "essential" to the officers' claims and therefore "necessarily raised." In order to prevail on their claims, the officers *must* establish that the federal consent decree did not obligate the City to adopt the procedure it did. *See Gunn*, 568 U.S. at 259 (finding federal jurisdiction where a federal issue was "necessary" for the plaintiff to "prevail on his . . . claim"). Without doing so, the officers are not entitled to relief directing the City to comply with a given procedure under state law.

Determining the scope and meaning of the federal consent decree is thus necessary to decide this case. Because the officers' petition, as the majority appears to agree, also satisfies the other three *Gunn* factors, I would reach the merits of their claims.